259 N.J. Super. 40 (1992)
611 A.2d 148
ROSE MARIE THEER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOSEPH THEER, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
PHILIP CAREY CO., ET ALS.,[1] DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS. ROSE MARIE THEER, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
PHILIP CAREY CO., ET ALS., DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 1992.
Decided August 4, 1992.
*42 Before Judges PETRELLA, ARNOLD M. STEIN and KESTIN.
*43 Karl Asch argued the cause for appellant/cross respondent (Karl Asch, P.A., attorney; Karl Asch of counsel; Benjamin D. Leibowitz and Karl Asch on the brief and reply brief).
Charles F. Rysavy argued the cause for respondents/cross-appellants (McCarter & English, attorneys for respondents Pittsburgh-Corning Corp., Fibreboard Corporation, Owens-Illinois, Inc., Keene Corporation; Andrew T. Berry, of counsel and on the reply letter brief; Charles F. Rysavy and Patrick Perrone on the brief; McAllister, Westmoreland, Vesper & Schwartz, P.C., attorneys for respondent Manville Corp. Asbestos Disease Compensation Fund; Carl J. Valore, of counsel; John M. Capasso and Jeffrey H. Sutherland on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Rose Marie Theer sues for the wrongful death of her husband, Joseph, which she claimed resulted from his continued exposure to defendants' asbestos products during his working years; and for her own injuries resulting from secondary exposure to asbestos. She appeals the verdict of no cause for action entered on all claims.
Joseph Theer died of lung cancer on August 1, 1986. Many of the facts set forth in this opinion come from a pretrial deposition taken during his lifetime while he was pursuing a personal injury action and his wife a consortium claim against defendants.[2] Portions of his deposition were read into evidence at trial.

THE WRONGFUL DEATH CLAIM
Joseph Theer was born on January 17, 1928. From childhood he would frequently work as an apprentice alongside his father, *44 an asbestos worker. In 1942, at age fourteen, he spent his summer vacation carrying, mixing and applying asbestos materials at a General Motors military production plant. He dropped out of school after completing the ninth grade and began working full-time at a bakery. Decedent was inducted into the United States Army in 1946 and was honorably discharged in 1947 at age nineteen.
Following his military discharge, decedent immediately began a full-time apprenticeship as an asbestos worker with Local 89 of the Heat and Frost Insulation and Asbestos Workers of America, a Trenton-based union. Except for the years 1954 through 1957 when he was a cook at his father-in-law's restaurant, decedent spent the next twenty-nine years working as an asbestos insulator. He worked at hundreds of jobs where he inhaled asbestos dust to which he was constantly exposed as he unloaded, sawed, mixed and applied asbestos materials at the various job sites. During his working years, he regarded asbestos dust as a "dirty nuisance," an inconvenience that he felt had to be accepted as part of his work. In his words, "You didn't run away from it [asbestos dust]; you stayed right there and worked with it." He never wore a respirator or mask during his years of asbestos work.
Decedent testified in his deposition that he never saw a warning label informing him about the potential health hazards associated with asbestos on any of the asbestos products that he handled. The defense presented evidence that two manufacturers had continuously placed warnings on their asbestos products from 1964 to 1968. Those warnings were phrased in general terms and did not specifically mention lung cancer or death as possible consequences of exposure to asbestos dust.
Decedent was a heavy smoker. He smoked one to one and one-half packs of cigarettes a day for thirty years.
Sometime in the mid-1970's, toward the end of his working career, decedent may have obtained some knowledge about the hazards of asbestos from a source other than the product *45 manufacturers. His union published a quarterly magazine, Asbestos Worker. Decedent testified at his deposition that he had read about the dangers of asbestos in articles published in the magazine. He also testified that he was not sure when he may have read the article, whether in 1974, 1975 or later. Moreover, he could not recall specific articles or their content but could only recall that they "probably" contained information about some asbestos hazards, probably asbestosis. He was certain that he never read any articles that cancer was a possible consequence of asbestos exposure. Defendant said that he "didn't pay much attention to that" information because "[m]ost of the magazine stuff contained therein is pertaining to jobs."
In 1976, decedent was forced to retire from work for health reasons. He was suffering from severe chest pain. His breathing was so impaired that he was unable to climb stairs, scale scaffolding or unload trucks. He was later diagnosed as suffering from pulmonary asbestosis and asbestos-related pulmonary disease. He could no longer work as an asbestos insulator. In 1976, once his health deteriorated, decedent finally ended his thirty-year cigarette smoking habit.
Decedent developed lung cancer by October 1984. Surgery was unsuccessful and the cancer spread to his scalp and brain. Subsequent chemotherapy and radiation treatments were also unsuccessful. He died of lung cancer on August 1, 1986.
Plaintiff contended that decedent's fatal lung cancer was caused by defendants' asbestos products, working either alone or synergistically with cigarette smoke. The asbestos manufacturers argued that cigarette smoke alone caused the cancer. They also contended decedent made no attempt to protect himself from the hazards of the product even though he had notice of its dangers from two sources: the warning labels placed on the products by two manufacturers as early as 1964; and Theer's deposition testimony that sometime in the mid-1970's he read "something" about the dangers of asbestos.
*46 The judge submitted five special interrogatories to the jury. The jury found (1) asbestos was a substantial contributing factor in the development of decedent's lung cancer; (2) asbestosis did not contribute to his death; (3) exposure to defendants' asbestos-containing products substantially contributed to the development of decedent's lung cancer; and (4) defendants' asbestos products were defective because they did not include any warnings or only inadequate warnings.
Question number five asked:
Has plaintiff proven by a preponderance of the evidence that the absence of a warning or instructions on the asbestos containing product(s) of the company or companies for which you answered "Yes" in question # 3 [was] the proximate cause of either of the injuries for which you answer[ed] "Yes" in questions 1 and 2? [emphasis added.]
The jury answered "no." The trial judge ruled that plaintiff had failed to prove proximate cause and entered a verdict of no cause for action. He denied plaintiff's subsequent motion for judgment notwithstanding the verdict, or alternatively a new trial.
There are two problems with question number five. First, it was improperly framed to impose a greater burden upon plaintiff as to proximate cause than the law required. Second, the question never should have been asked at all.
Plaintiff was required to prove that the defect was a proximate cause, not the proximate cause of the injuries leading to decedent's death. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209, 485 A.2d 305 (1984). The question was fatally misleading on the proximate cause issue.
More importantly, the question should never have been submitted to the jury. By its answers to the previous questions, the jury determined that defendants' products were defective (contained inadequate warnings or none at all), and that these defective products substantially contributed to the development of decedent's lung cancer. Plaintiff had nothing left to prove. She had already met her burden of establishing all the elements of an asbestos-related failure to warn case: the injuries were *47 proximately caused by exposure to the product and the defect in the product was a proximate cause of harm. Campos v. Firestone Tire & Rubber Co., supra, 98 N.J. at 209, 485 A.2d 305; Coffman v. Keene Corporation, 257 N.J. Super. 279, 284, 608 A.2d 416 (App.Div. 1992); Sholtis v. American Cyanamid Corp., 238 N.J. Super. 8, 30-31, 568 A.2d 1196 (App.Div. 1989).
Plaintiff did not have to prove that asbestos exposure was the sole cause of death to the exclusion of all other causes. For example, the jury could have found that decedent's thirty years of cigarette smoking contributed to his developing lung cancer. There was oral testimony from both sides as to the synergistic effects of cigarette smoking. "There may be two or more concurrent and directly cooperative and efficient proximate causes of an injury." Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 245, 432 A.2d 925 (1981); Menth v. Breeze Corporation, Inc., 4 N.J. 428, 442, 73 A.2d 183 (1950). Plaintiff proved medical and legal proximate cause when the jury concluded that exposure to defendants' defective products was a substantial factor in bringing about decedent's lung cancer. Kelly v. Gwinnell, 96 N.J. 538, 543, 476 A.2d 1219 (1984); Bendar v. Rosen, 247 N.J. Super. 219, 229, 588 A.2d 1264 (App.Div. 1991). She also proved proximate causation even assuming that decedent read an article in the 1970's  shortly before his retirement as disabled after thirty years as an asbestos worker  indicating that asbestos presented some hazards. Even if the jury considered such meager proofs on the causal relationship question, plaintiff prevailed because she proved that it was defendants' defective products which were a substantial factor, regardless of other causes, in bringing about decedent's lung cancer.
Plaintiff had already proved all of the elements of her case before submission of the wrongfully worded, superfluous interrogatory relating to proximate cause. It would be a clear miscarriage of justice to make her try this case all over again on liability. Grasser v. Kitzis, 230 N.J. Super. 216, 222, 553 *48 A.2d 346 (App.Div. 1988). On remand, the wrongful death action will be tried on damages alone.
We find no merit in defendants' contention that the trial judge improperly permitted Dr. Murphy, plaintiff's medical expert, to read portions of decedent's autopsy report into evidence. The offending excerpt from the document said:
The clinical data and the post mortem findings implicate respiratory compromise as a function of restrictive disease in this man's death. Restrictive lung disease, interstitial fibrosis can result from cigarette smoking and/or from asbestos exposure. Risk for the development of adenocarcinoma is highly normal with significant exposure to asbestos or to cigarette smoke and the risk is multiplied several fold with exposure to both of these substances which act synergistically.
The excerpt was properly offered by Dr. Murphy under Evid. R. 56(2), as information relied upon by experts in a particular field. State v. Harvey, 121 N.J. 407, 430-31, 581 A.2d 483 (1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1336, 113 L.Ed.2d 268 (1991); Grassis v. Johns-Manville Corp., 248 N.J. Super. 446, 454-55, 591 A.2d 671 (App.Div. 1991). In any event, if there was any error it was harmless. The references to medical opinions, including the above quotation, were removed from the report before it was submitted to the jury. Finally, Dr. Epstein, defendants' expert, testified that a synergistic relationship existed between asbestos exposure and cigarette smoking. R. 2:10-2; Gaido v. Weiser, 227 N.J. Super. 175, 189, 545 A.2d 1350 (App.Div. 1988), affirmed, 115 N.J. 310-11, 558 A.2d 845 (1989).

ROSE MARIE THEER'S CLAIM
Plaintiff married decedent in 1950. Throughout her marriage, she was exposed to the asbestos dust that he brought home on his clothes. Plaintiff contended that this exposure led to the deterioration of her physical and mental health. Plaintiff was a heavy, long-time smoker, about a pack a day for thirty-six years. Defendants argued that her continued smoking caused her illness.
*49 Plaintiff's health problems began around 1970 when she underwent heart surgery to repair a malfunctioning mitral valve. In 1981 she was successfully treated for right lung pneumonia. In 1985, before her husband's death, she underwent surgery to remove a mass from her right lung.
Plaintiff's medical experts testified that the mass removed from her right lung was a "rounded atelectasis," caused by her exposure to asbestos. Defendants' experts testified that the removed mass was the result of pleural thickening caused by plaintiff's earlier bout with pneumonia. In answer to special interrogatories, the jury found that plaintiff had not sustained an asbestos-related physical injury. The judge had instructed the jurors to proceed no further with plaintiff's case if they determined that she had not incurred an asbestos-related injury. Because of this threshold requirement of a prior asbestos-related injury was not met, the jury never addressed her medical surveillance claim.
We agree with plaintiff's contention that the trial judge incorrectly compelled her to prove that she had incurred a prior asbestosis-related injury before her claim for medical surveillance damages could be submitted to the jury. Plaintiff's physician testified that she was at risk to develop lung cancer because of her long-term exposure to asbestos dust on her husband's work clothes. The doctor recommended a regular program of medical testing and surveillance for the rest of plaintiff's life to assure the early detection of any cancer that might arise.
In Ayers v. Jackson Tp., 106 N.J. 557, 525 A.2d 287 (1987), the New Jersey Supreme Court first recognized the viability of medical surveillance claims:
[W]e hold that the cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the *50 effect of exposure to toxic chemicals is reasonable and necessary. [Id. at 606, 525 A.2d 287.]
Ayers did not require that plaintiffs prove a prior injury resulting from exposure to a toxic substance before they could recover costs for future medical surveillance. The court permitted "recovery for presymptom medical surveillance expenses" based partly on the rationale that "[t]he availability of a substantial remedy before the consequences of the plaintiffs' exposure are manifest may also have the beneficial effect of preventing or mitigating serious future illnesses and thus reduce the overall costs to the responsible parties." Id. 106 N.J. at 604, 525 A.2d 287.
Under Ayers, prior injury is not a threshold requirement of a medical surveillance claim. The trial judge erred when he instructed the jurors not to address plaintiff's medical surveillance claim if they first determined that she had not incurred an asbestos-related injury. It will be for the jury to determine whether plaintiff is seeking recovery for medical testing over and above that which she normally requires for her long-standing health problems.
The judge correctly required the jury to determine whether plaintiff had incurred an asbestos-related injury as a prerequisite to considering her claim for emotional distress damages. A plaintiff wrongly exposed to toxic substances may recover damages where the resultant emotional distress is severe, substantial and tantamount to physical injury. Advisory Com'n v. Diamond Shamrock, 243 N.J. Super. 170, 174-75, 578 A.2d 1248 (App.Div. 1990). However, if there is no physical injury and the emotional distress is only that generally arising from the knowledge that a person has been tortiously exposed to a toxic substance, there can be no recovery. Id. Plaintiff's proofs do not demonstrate that she suffers serious mental distress arising from her exposure to asbestos.
The judgment in favor of defendants on the wrongful death claim and the remaining survivorship and consortium claims is *51 reversed and the matter is remanded to the Law Division for trial on damages.
The judgment in favor of defendants dismissing plaintiff's medical surveillance claim is reversed and that matter is remanded to the Law Division on all issues relating to that claim.
The judgment dismissing plaintiff's emotional distress claim is affirmed.
NOTES
[1] We have not listed the names of all defendants because it would make an unduly lengthy caption.
[2] Theer's personal injury action for asbestosis and his wife's related consortium claim were dismissed before trial as time-barred by the statute of limitations. N.J.S.A. 2A:14-2.