628 A.2d 724

ROSE MARIE THEER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOSEPH R. THEER, DECEASED, PLAINTIFF-RESPONDENT, v. PHILIP CAREY CO.; PHILIP CAREY MANUFACTURING CO.; SMITH AND KANZLER, CO.; CELOTEX, INC., INDIVIDUALLY AND AS SUCCESSOR TO PHILIP CAREY CO., PHILIP CAREY MANUFACTURING CO. AND SMITH AND KANZLER CO.; COMBUSTION ENGINEERING, INC.; EAGLE PICHER INDUSTRIES, INC.; PABCO, INC.; THE RUBEROID COMPANY; MANVILLE CORPORATION; JOHNS-MANVILLE CORPORATION; JOHNS-MANVILLE PRODUCTS CORPORATION; JOHNS-MANVILLE SALES CORPORATION; EHRET MAGNESIA MANUFACTURING CO.; BALDWIN-EHRET-HILL, INC.; KEASBEY & MATTISON CO.; NICOLET INDUSTRIES, INC., INDIVIDUALLY AND AS SUCCESSOR TO KEASBEY & MATTISON, CO.; TURNER & NEWALL, P.L.C., AS ALTER EGO OF KEASBEY & MATTISON CO.; OWENS-CORNING FIBERGLAS CORPORATION; UNARCO INDUSTRIES, INC.; ARMSTRONG WORLD INDUSTRIES, INC., FORMERLY KNOWN AS ARMSTRONG CORK CO.; EMPIRE ACE INSULATION MANUFACTURING CORPORATION AND JOHN DOE 1 THROUGH JOHN DOE 50, DEFENDANTS, AND FIBREBOARD CORP., INDIVIDUALLY AND AS SUCCESSOR TO PABCO, INC.; GAF CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO THE RUBEROID COMPANY; KEENE CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO EHRET MAGNESIA MANUFACTURING CO. AND BALDWIN-EHRET-HILL, INC.; OWENS-ILLINOIS, INC. AND PITTSBURGH CORNING CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO UNARCO INDUSTRIES, INC., DEFENDANTS-APPELLANTS.

ROSE MARIE THEER, PLAINTIFF-RESPONDENT, v. PHILIP CAREY CO.; PHILIP CAREY MANUFACTURING CO.; SMITH AND KANZLER, CO.; CELOTEX, INC., INDIVIDUALLY AND AS SUCCESSOR TO PHILIP CAREY CO., PHILIP CAREY MANUFACTURING CO. AND SMITH AND KANZLER CO.; COMBUSTION ENGINEERING, INC.; EAGLE PICHER INDUSTRIES, INC.; PABCO, INC.; THE RUBEROID COMPANY; MANVILLE CORPORATION; JOHNS-MANVILLE CORPORATION; JOHNS-MANVILLE PRODUCTS CORPORATION; JOHNS-MANVILLE SALES CORPORATION; EHRET MAGNESIA MANUFACTURING CO.; BALDWIN-EHRET-HILL, INC.; KEASBEY & MATTISON CO.; NICOLET INDUSTRIES, INC., INDIVIDUALLY AND AS SUCCESSOR TO KEASBEY & MATTI-

SON CO.; TURNER & NEWALL, P.L.C., AS ALTER EGO OF KEASBEY & MATTISON CO.; OWENS–CORNING FIBERGLAS CORPORATION; UNARCO INDUSTRIES, INC.; ARMSTRONG WORLD INDUSTRIES, INC., FORMERLY KNOWN AS ARM-STRONG CORK CO.; EMPIRE ACE INSULATION MANUFAC-TURING CORPORATION; JOHN DOE 1 THROUGH JOHN DOE 50, AND INDUSTRIAL HEALTH (HYGIENE) FOUNDATION, DEFENDANTS, AND FIBREBOARD CORP., INDIVIDUALLY AND AS SUCCESSOR TO PABCO, INC.; GAF CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO THE RUBEROID COMPANY; KEENE CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO EHRET MAGNESIA MANUFACTURING CO. AND BALDWIN–EHRET–HILL, INC.; OWENS–ILLINOIS, INC. AND PITTSBURGH CORNING CORPORATION, INDIVIDUAL-LY AND AS SUCCESSOR TO UNARCO INDUSTRIES, INC., DEFENDANTS–APPELLANTS.

Argued March 1, 1993—Decided July 26, 1993.

*Gita F. Rothschild* argued the cause for appellants Fibreboard Corp., individually and as successor to Pabco, Inc.; Keene Corporation, individually and as successor to Ehret Magnesia Manufacturing Co. and Baldwin–Ehret–Hill, Inc.; Owens–Illinois, Inc. and Pittsburgh Corning Corporation, individually and as successor to Unarco Industries, Inc. (*McCarter & English,* attorneys; *Andrew T. Berry,* of counsel; *Mr. Berry* and *Charles F. Rysavy,* on the briefs).

*Karl Asch* argued the cause for respondent (*Mr. Asch,* attorney; *Mr. Asch* and *David R. Goldberg,* on the brief).

*Edward J. Wilbraham* submitted a letter in lieu of brief on behalf of appellant GAF Corporation, individually and as successor to The Ruberoid Company.

The opinion of the Court was delivered by

HANDLER, J.

In this case, an asbestos fitter was exposed over a long period to asbestos in the workplace. He died from lung cancer allegedly

caused in part from asbestos-related injuries resulting from his exposure to this hazardous substance. Decedent's surviving wife was indirectly exposed to asbestos in the course of handling decedent's work clothes and, as a result, is allegedly at risk of contracting asbestos-related disease. In a strict-product-liability action brought by the surviving wife individually and on behalf of decedent, plaintiff asserted that defendants were liable because of their failure to provide adequate warnings of the dangers from exposure to asbestos.

In the companion case, *Coffman v. Keene*, 133 *N.J.* 581, 628 *A.*2d 710 (1993), decided today, we held that a plaintiff in a failure-to-warn product-liability case is entitled to a presumption that had a warning been given, it would have been heeded; that such a presumption is rebuttable by evidence sufficient to demonstrate that had a warning been provided, it would have been disregarded by the plaintiff; and that if the presumption is not rebutted, the failure to warn is presumed to be a proximate cause of the plaintiff's injuries.

In this case, we are similarly asked to determine the applicability of a heeding presumption in a failure-to-warn product-liability case. Further, we are asked to consider specifically whether the evidence relating to decedent's conduct was sufficient to overcome the heeding presumption. That inquiry, in turn, raises the issue, directly presented in this case, but also considered and resolved in *Coffman*, of whether the fact that the unsafe product was used in the workplace and the resultant injury was work-related is material in defining and applying the heeding presumption.

This appeal also presents two other issues. One is whether, in the asbestos context, a plaintiff, in the absence of any manifest asbestos-related condition, can recover as compensatory damages the cost of future medical surveillance to monitor his or her health necessitated by the indirect exposure to asbestos. A final issue relates to the admissibility of an expert's opinion with respect to medical causation that was contained in an autopsy report that was otherwise admissible in evidence as a business record.

## I

Joseph Theer died of lung cancer after a lifetime spent as an asbestos worker. His wife, Rose Marie Theer, the plaintiff in this case, brought an action in strict product liability on behalf of decedent and individually against various asbestos manufacturers that had supplied the products with which decedent had worked. She contends that her husband's injuries, as well as several of her own ailments, were caused by exposure to defendants' products. At present, only two defendants, Philip Carey Co. and GAF Corporation, remain in this action.

Decedent was first exposed to the product when he interned as an asbestos mixer at a General Motors Plant in 1942 at age fourteen. He recommenced full-time work as an asbestos insulator after his discharge from the army in 1947. He worked with asbestos for almost twenty-nine years. During his work, decedent never wore a mask or any other protective gear. Despite the fact that two manufacturers had supplied warnings in 1964 and 1968, decedent never saw any warning labels on the products he used. However, in a deposition taken prior to his death, decedent acknowledged that he had seen an article in a union magazine in the mid–1970s that discussed asbestosis.

In 1976, decedent retired in ill health. He was diagnosed as having pulmonary asbestosis and asbestosis-related pulmonary disease. At that time, he quit his thirty-year, one-and-a-half pack-a-day smoking habit. In 1984, decedent contracted lung cancer. After unsuccessful surgery, the cancer spread to his scalp and brain. He died of lung cancer in 1986. At trial, the issue of medical causation was sharply contested. The experts for plaintiff testified that there was a synergistic interaction between exposure to asbestos and cigarette smoking. They expressed the opinion that decedent's exposure to asbestos was a substantial factor in the causation of his lung cancer.

Plaintiff, decedent's wife, had also come into contact with asbestos dust through years of washing her husband's clothing. In 1970, at age thirty-eight, Mrs. Theer underwent heart surgery to

repair a mitral valve. In 1981, doctors treated her for right lung pneumonia. Finally, in 1985, plaintiff had surgery to remove a rounded atelectasis from her right lung. Mrs. Theer stated that her health problems stemmed from her exposure to asbestos. However, she had also smoked a pack of cigarettes a day for thirty-six years. Experts testified that Mrs. Theer's exposure to asbestos dust on her husband's clothes had caused the mass in her lung and had increased her risk of developing lung cancer. Because of the increased risk of cancer, her doctors recommended life-long medical surveillance. Defendants' experts disagreed and alleged that the mass was due to pleural thickening from her bout with pneumonia.

The jury concluded, by answering a special interrogatory, that decedent had not proven that the lack of warning was the proximate cause of decedent's asbestos-related injuries. The court consequently entered a verdict of no cause of action. With regard to Mrs. Theer's injuries, the jury found that she did not have an asbestos-related injury. Accordingly, the court did not allow the jury to reach her claim for damages for emotional suffering and costs of medical surveillance based on the increased risk of cancer.

The Appellate Division reversed and remanded in part. 259 *N.J.Super.* 40, 611 *A.*2d 148 (1992). With respect to proof of causation, the parties raised the issue of whether plaintiff was entitled to a heeding presumption, but the court declined to rule on whether the presumption should be applied. The court, nevertheless, determined that the jury, as reflected in its answer to a special interrogatory, had found that defendants' warnings were inadequate and that those inadequate warnings had contributed substantially to decedent's cancer. Accordingly, the Appellate Division held that plaintiff had met her burden of proof with respect to whether the lack of a warning had caused decedent's injuries. *Id.* at 47, 611 *A.*2d 148. On remand, the sole issue to be considered with respect to the wrongful death action was that relating to damages. *Ibid.*

The Appellate Division also determined that the trial court had incorrectly held that Mrs. Theer had to prove that she had contracted an asbestos-related injury in order to recover damages for the costs of medical surveillance attributable to the exposure of asbestos. *Id.* at 49, 611 *A.*2d 148. The issue was remanded for the jury to determine whether she required additional medical surveillance stemming from asbestos exposure above and beyond her current medical treatment. *Ibid.*

The Appellate Division further noted that the autopsy report contained the opinion of the medical expert that a synergistic interaction existed between asbestos exposure and cigarette smoking and that the asbestos exposure was a cause of decedent's lung cancer. It ruled that that opinion was admissible in evidence under *Evidence Rule* 56(2) as information relied on by experts in the field. *Id.* at 48, 611 *A.*2d 148. The court further concluded that the reading of the report with that opinion would have constituted harmless error at most in light of other evidence relating to medical causation. *Ibid.*

We granted the petition for certification, 130 *N.J.* 601, 617 *A.*2d 1223 (1992). It raises three issues: whether the record contains sufficient evidence of causation and whether a heeding presumption should be applied with respect to proof of causation; whether costs of medical surveillance are available as compensatory damages for one exposed to asbestos; and whether expert opinion on medical causation contained in an autopsy report is admissible evidence.

## II

The dispute in this case concerning proximate causation has two aspects. One relates to the significance of answers to special interrogatories, the other involves the use of a heeding presumption. These considerations, although analytically distinct, are interrelated because both are relevant to the issue of causation, specifically, to whether the failure to warn was a product defect that constituted a substantial cause of decedent's injuries.

The parties in this case have presented strong opposing arguments over whether the trial court should have applied the heeding presumption to allow plaintiff to prove that the absence of a warning had proximately caused decedent's injuries. Plaintiff contends that she should have been afforded the benefit of the presumption that decedent would have followed an adequate warning had one been provided by defendant. She argues further that because the injury occurred in the workplace, the heeding presumption should encompass the fact that decedent had no meaningful choice with respect to following warnings had they been given. Defendants, in turn, contend that the presumption should not be available. They also argue that specific evidence proffered about decedent's conduct demonstrates that he would not have followed a warning had one been provided. Hence, defendants claim, that evidence was sufficient to overcome such a presumption and to render it inapplicable.

■ We explained in *Coffman* that in *asbestos* failure-to-warn cases, a plaintiff must normally prove two separate elements of causation. The plaintiff must demonstrate that his or her injuries were proximately caused by exposure to defendant's asbestos product. That is known as "medical causation." The plaintiff must also demonstrate so-called product-defect causation—that the defect in the product was a proximate cause of the injury. Because the alleged product defect is the failure to provide warnings, the plaintiff is required to prove that the absence of a warning was a proximate cause of his or her harm. 133 *N.J.* at 594–595, 628 *A*.2d at 716.

■ We also pointed out in *Coffman* that the heeding presumption in failure-to-warn cases serves to ease an injured plaintiff's burden of proof. That objective is especially important because " 'in a failure to warn case, establishing that the absence of a warning was a substantial factor in the harm alleged to have resulted from exposure to the product itself is particularly difficult.' " *Id.* at 600, 628 *A*.2d at 719 (quoting the Appellate Division's opinion in *Coffman,* 257 *N.J.Super.* 279, 295, 608 *A*.2d 416

(1992)). In particular, the heeding presumption serves to eliminate conjecture about whether a given plaintiff would have heeded a hypothetical warning, and discourages determinations of causation that are based on extraneous, speculative considerations and unreliable or self-serving evidence. 133 *N.J.* at 601, 628 *A.*2d at 719.

A heeding presumption is especially significant in a case, such as this, in which the injured party is deceased. Because a deceased plaintiff cannot take the stand to testify about his or her would-be reactions to a warning, a jury's deliberations on whether the decedent would have heeded a warning becomes highly conjectural. *See Wundrack v. Armstrong World Indus.,* 1991 *WL* 172956 (D.N.J.1991) (slip op. at 6) (acknowledging difficulties involved in proving that decedent would have followed proper warning if given). We are thus satisfied that, as we held in *Coffman,* the heeding presumption should have been afforded to plaintiff to allow her to meet her burden of proof concerning product-defect causation.

Defendants contend, however, that even if the trial court had applied a heeding presumption, they produced sufficient evidence to rebut such a presumption. That evidence was that decedent had read a magazine article that apprised him of the dangers of asbestos. That, defendants argue, demonstrates that decedent, with knowledge of the danger of asbestos, continued voluntarily to work with the product. Hence he would not have heeded a warning of those dangers had one been provided. In effect, defendants assert, that evidence successfully rebutted the presumption, and once the presumption is rebutted, it no longer serves to assist plaintiff on the issue of causation. Consequently, according to defendants, plaintiff would still bear the burden of proving that despite decedent's knowledge of asbestosis, defendants' failure to warn had proximately caused his injuries.

In response, plaintiff argues that her husband allegedly became aware of asbestosis shortly before his retirement, after nearly thirty years of exposure to the product. Thus, she contends, it is

immaterial whether he could have taken safety precautions at the latter stages of his career. Of greater significance, plaintiff points out that decedent sustained his injuries while handling asbestos at work. Because the injury arose at the workplace, plaintiff claims decedent had no "meaningful choice" with respect to whether he continued to work with asbestos even after becoming cognizant of its health risks. Hence, the mere knowledge that decedent was aware of the dangers from asbestos exposure would not be sufficient to overcome the heeding presumption.

As we stated in *Coffman, supra,* "[a] plaintiff who uses or is exposed to a defective product in the course of his or her employment may not be able to exercise meaningful choice with respect to confronting the risk of injury posed by the product." *Id.* at 605, 628 *A.2d* at 722. In many work situations, an employee must continue to work under unsafe conditions even though aware of certain health hazards or face losing his or her gainful employment. Consequently, "[i]t is unreasonable to assume that an employee would leave his or her position once apprised of certain safety hazards, when such hazards are not rectified by the employer." *Ibid.*

Those considerations are clearly applicable to this case. The record indicates that decedent's extended exposure to asbestos occurred through his employment as an asbestos fitter. He was required to handle and use asbestos directly. We are hard put to conceive that he had any meaningful choice to avoid being intimately and continuously involved with asbestos. Thus, it would be unreasonable to assume that decedent, once he became aware of certain asbestos hazards, could have readily taken self-protective measures to avoid those risks. In a deposition prior to his death, decedent indicated that he regarded asbestos dust as a "dirty nuisance," an inconvenience that he felt had to be accepted as part of his work. Decedent also remarked, "You didn't run away from it [asbestos dust]; you stayed right there and worked with it."

We stressed in *Coffman* that employers have an independent duty to provide a safe workplace for their employees, and that a

manufacturer or supplier of a product intended for use in the workplace is under a concurrent duty to warn employers, as well as employees, concerning the safety risks of its products. 133 *N.J.* at 606–608, 628 *A.*2d at 722–723. Thus, "Consistent with that duty to warn, it should be presumed that such warnings directed to employers and employees will be heeded." *Id.* at 607, 628 *A.*2d at 723.

■ The heeding presumption, consequently, applies to both employers and employees. *Ibid.* Hence, in order to overcome the heeding presumption as applied in a failure-to-warn case involving a product used in the workplace

> the manufacturer must prove that had an adequate warning been provided, the plaintiff-employee with meaningful choice, would not have heeded the warning. Alternatively, the manufacturer must show that had an adequate warning been provided, the employer itself would not have heeded the warning by taking reasonable precautions for the safety of its employees and would not have allowed its employees to take measures to avoid or minimize the harm. [*Id.* at 609, 628 *A.*2d at 724.]

We noted in *Coffman* that the heeding presumption does not impose insuperable burdens of proof on manufacturers or suppliers with respect to whether the failure to warn was a cause of an employee's injury from exposure to or use of its dangerous product. *Id.* at 608, 628 *A.*2d at 723. Evidence of a plaintiff's own conduct bears directly on the issue of proximate cause and on the effect of the heeding presumption. That evidence would encompass a plaintiff's experience, conduct, attitudes, and knowledge of the hazards of the product.

For example, in this case, defendants presented evidence that decedent had become aware of the harmful propensities of asbestos through a reference to asbestosis in a union magazine that decedent had read. That evidence, apart from its weight, does bear relevantly on whether decedent would have disregarded an adequate warning of the dangers of asbestos. In addition, the record discloses that decedent was a longtime, chronic smoker. That also might be probative of whether decedent had been generally indifferent to matters of personal health or specifically

indifferent to warnings of particular health hazards. That is illustrated in this case through decedent's own deposition, and further indicated by the comments of counsel for defendants in the course of oral argument, that many plaintiff-asbestos victims during discovery have disclosed their actual awareness of the risks of asbestos.

However, decedent's exposure to asbestos occurred in the workplace. Consequently, defendant must also adduce evidence that decedent would have had a meaningful choice to take effective precautions against hazards had he so chosen. Thus, because the failure to warn arises in the employment context, defendants were required to produce evidence to overcome the heeding presumption with respect to the employer's conduct. That presumption is that the employer would have heeded the warning had it been given and would have communicated that warning to its employees and enabled them to take precautions to prevent or minimize asbestos-related injury. *See Coffman, supra,* 133 *N.J.* at 609, 628 *A.*2d at 724.

We repeat that the burden of proof in that regard is not insurmountable. Evidence needed to effectively overcome the heeding presumption with respect to employers would relate to the adequacy of the warnings that were given, whether they were directed to employers, whether they were calculated to reach and inform employees who would foreseeably be exposed to those products in the workplace, and whether the employer would have required or allowed employees to take precautionary measures to overcome the risks of exposure to asbestos. The record, in this case, contains evidence that two defendants had placed warnings on two of its asbestos products as early as the 1960s. Although that evidence standing alone would not establish that the decedent's employer would have heeded an adequate warning, coupled with other proofs relating to the substance of the warnings and their dissemination, it could be probative on the issue of causation.

The Appellate Division, as earlier noted, declined to consider or apply the heeding presumption. In its view, plaintiff had other-

wise met her burden of proof with respect to proximate causation. 259 *N.J.Super.* at 47, 611 *A.*2d 148. Accordingly, it entered a judgment of liability against defendant based on that determination.

At trial, the jury was asked by the fifth special interrogatory to determine whether the absence of a warning on defendants' products had been *the* proximate cause of decedent's asbestosis and lung cancer. The jury answered "no" to that question. Based on that answer, the trial court determined that decedent had failed to prove proximate causation with respect to the lack of warning and entered a no cause of action. In effect, the trial court concluded that plaintiff had not proven that the product defect (*i.e.,* lack of adequate warnings) was itself the proximate cause of decedent's injuries.

The Appellate Division found that the use of that interrogatory was error because it imposed a greater burden with respect to proximate cause than the law required and it should not have been asked at all. 259 *N.J.Super.* at 46, 611 *A.*2d 148. The court concluded that the interrogatory was "fatally misleading" because it indicated to the jury that decedent could recover only if asbestos had been the *sole* cause of his injuries, rather than one of several concurrent causes, such as cigarette smoking. *Ibid.*

Nevertheless, the court observed that in order to meet her burden of proof, plaintiff was required to demonstrate only that "defendants' products were defective, contained inadequate warnings . . . and that these defective products substantially contributed to the development of decedent's lung cancer." *Id.* at 46–47, 611 *A.*2d 148. It further noted, "there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury." *Id.* at 47, 611 *A.*2d 148.

The Appellate Division concluded that plaintiff had in fact proved proximate causation by establishing that the lack of warning had been a substantial factor, regardless of other causes, in causing her husband's lung cancer. *Id.* at 46–47, 611 *A.*2d 148. It found support for that conclusion in the jury's answer to the third

special interrogatory, namely, that exposure to defendants' asbestos-containing products had substantially contributed to the development of decedent's lung cancer. *Id.* at 46, 611 *A.*2d 148. It reasoned that plaintiff had proved all the requisite elements of causation "before submission of the wrongfully worded, superfluous interrogatory relating to proximate cause." *Id.* at 47, 611 *A.*2d 148.

We are constrained to disagree with the court's reasoning and its conclusion. It is not possible to reconstruct and recast the jury's deliberations simply by parsing the answers to the special interrogatories, or identifying which of its determinations or answers is critical, or eliminating the erroneous interrogatory from the mix. In addition, the third interrogatory on which the Appellate Division posited its conclusion that the jury in fact had determined the issue of proximate causation does not fully resolve that essential issue. As previously mentioned, causation in asbestos failure-to-warn cases has two elements—medical causation and product-defect causation. We are uncertain whether the third interrogatory focused the jury's inquiry on product-defect causation or medical causation, or, indeed, whether the Appellate Division in concluding that the jury had found causation itself clearly read the third interrogatory as addressing only product-defect causation and eliminating medical causation.

We reverse as much of the Appellate Division's judgment as determined that defendant was liable, based on its failure to warn, for decedent's fatal lung cancer, and we remand for a retrial to determine whether defendants' failure to warn was in fact the proximate cause of decedent's injuries. In the determination of that issue on a retrial, plaintiff should be afforded the use of the heeding presumption.

### III

At trial, the jury concluded that Mrs. Theer had not suffered an asbestos-related injury. The trial court therefore instructed the jury that it need not determine whether she was entitled to

recover for future medical-surveillance costs because of the increased risk of contracting cancer.

The Appellate Division characterized the trial court as imposing a "threshold requirement" of a prior asbestos-related injury before plaintiff could recover for the increased risk of a *future* injury. 259 *N.J.Super.* at 49, 611 *A.*2d 148. It felt that "the trial court incorrectly compelled [plaintiff] to prove that she had incurred a prior asbestos-related injury before the claim for medical surveillance damages could be submitted to the jury." *Ibid.* Citing *Ayers v. Jackson Township,* 106 *N.J.* 557, 605, 525 *A.*2d 287 (1987), the court concluded that plaintiff was not required to have a demonstrable prior injury from exposure to a toxic substance before recovering the costs of future medical surveillance. Thus, the court reversed and remanded for jury consideration plaintiff's medical-surveillance claim. 259 *N.J.Super.* at 50, 611 *A.*2d 148. On remand, the jury was to "determine whether plaintiff is seeking recovery for medical testing over and above that which she normally requires for her longstanding health problems." *Ibid.*

Defendants argue that Mrs. Theer's contention that she may contract an asbestos-related injury in the future is highly speculative. Defendants believe that allowing plaintiff to proceed with her medical-surveillance claim would open the floodgates for scores of lawsuits of a similar kind (*i.e.,* plaintiffs with no cognizable injury but with an increased risk of cancer). Defendants further claim that because plaintiff must undergo identical medical treatment for her existing ailments, they should not be forced to pay for those non-asbestos-related medical procedures.

In *Ayers, supra,* we held that over three hundred residents of a township were entitled to damages for the cost of future medical surveillance after they had drunk contaminated well water. 106 *N.J.* at 565, 525 *A.*2d 287. Medical experts were able to establish a significant but unmeasurable risk of contracting cancer. We also noted the difficulty that plaintiffs would have in proving causation in the toxic-tort context because of the long latency

period of certain diseases. Consequently, we determined that plaintiffs were entitled to medical-surveillance damages because they would not have had to undergo yearly medical examinations had it not been for exposure to defendant's chemicals. *Id.* at 599– 607, 525 *A.*2d 287. We specifically recognized plaintiffs' right to recover the cost of periodic medical examinations "notwithstanding the fact that the extent of plaintiffs' impaired health [was] unquantified." *Id.* at 606, 525 *A.*2d 287. We declined to make applicable to the *Ayers* claimants a new rule of law that would, in massexposure toxic-tort litigation against public entities, foster the use of a fund to underwrite the group's medical expenses.

In *Mauro v. Raymark Industries,* 116 *N.J.* 126, 561 *A.*2d 257 (1989), a worker who experienced pleural thickening attributable to exposure to asbestos sued asbestos manufacturers to recover for his increased probability of contracting lung cancer. Although we rejected plaintiff's claim for damages attributable to the enhanced risk of cancer, we concluded that he could recover the cost of medical surveillance necessitated by that risk. We noted that "[e]xposure to toxic chemicals may sustain a claim for medical surveillance damages under the criteria set forth in *Ayers.*" *Id.* at 138, 561 *A.*2d 257. Pursuant to *Ayers,* we permit medical-surveillance recovery when "the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease ..., and the value of early diagnosis." 106 *N.J.* at 606, 525 *A.*2d 287. The plaintiff in *Mauro* had been directly and extensively exposed to asbestos. As a consequence, he suffered a condition that was directly caused by asbestos, and the risk to his health from cancer was distinctively attributable to the exposure to asbestos. In adapting that *Ayers* standard, the Court found that under those circumstances, plaintiff's claims, including medical surveillance damages, although based on exposure to *asbestos,* were cognizable.

*Ayers* indicates that medical-surveillance damages constitute a special compensatory remedy designed to address the unique harm entailed in an increased risk of future injury arising from the exposure to toxic chemicals. It is not easily invoked. The remedy in *Ayers* was fashioned to help a class of person who had been victimized by a public entity. The feasibility of developing a fund to provide limited compensation was a relevant consideration. Because persons may often be exposed to toxic chemicals in a product-liability context, we recognize the soundness of *Mauro*, which, in a limited context, extends the *Ayers* cause of action to plaintiffs who have suffered increased risk of cancer when directly exposed to a defective or hazardous product like asbestos, when they have already suffered a manifest injury or condition caused by that exposure, and whose risk of cancer is attributable to the exposure.

However, we note that such a cause of action applies only to persons who have been *directly* exposed to hazardous substances. In addition, medical-surveillance damages may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury, and would require a course of medical monitoring independent of any other that the plaintiff would otherwise have to undergo. If a plaintiff is exposed to a product in an indirect manner, and, further, has not suffered from any injury or condition relating to that exposure, it becomes increasingly difficult for courts and juries to determine the direct correlation between the indirect exposure and any future risk of injury.

In this case, plaintiff, through the laundering of her husband's clothes, was only *indirectly* exposed to asbestos. It is impossible to approximate or to quantify the extent to which she may have encountered the substance, given that her exposure was essentially "second-hand." Plaintiff did not suffer from any injury or condition clearly related to asbestos exposure. Further, plaintiff was a heavy smoker. Thus, there may be multiple factors that contribute to any future injuries that she may have. *See e.g.,*

*Dafler v. Raymark Indus.*, 259 *N.J.Super.* 17, 29, 611 *A.*2d 136 (App.Div.1992) (concluding that asbestos exposure and smoking were concurrent causes of plaintiff's lung cancer), *aff'd o.b.*, 132 *N.J.* 96, 622 *A.*2d 1305 (1993). Plaintiff's indirect and hence less-tangible exposure to asbestos, when coupled with her chronic smoking, make it difficult to determine if there is a direct correlation between the asbestos exposure and future medical costs.

We consequently reverse the Appellate Division's judgment, and conclude that medical surveillance damages are not available for plaintiffs who have not experienced direct and hence discrete exposure to a toxic substance and who have not suffered an injury or condition resulting from that exposure and whose risk of cancer cannot be limited and related specifically and tangibly to that exposure.

## IV

During the trial, one of Mrs. Theer's expert witnesses, Dr. Murphy, based part of his testimony on an autopsy report regarding the causal effects of asbestos and cigarette smoking on her husband's death. In particular, Murphy referred to a passage contained in the examiner's report that stated that asbestos was a substantial contributing factor in the development of decedent's cancer. Dr. Murphy apparently read the examiner's opinion into the record. Although the trial court did not give a curative instruction, the passage was redacted when the report was given to the jury.

Defendants contend that the opinion of the medical examiner set forth in the autopsy report constitutes inadmissible hearsay. They claim that our *Rules of Evidence* do not allow an autopsy examiner's opinions into evidence even if the report's findings are admissible. The Appellate Division, however, found that the excerpt expressing the opinion was admissible pursuant to *Evidence Rule* 56(2) as information relied on by experts in a specific field. 259 *N.J.Super.* at 48, 611 *A.*2d 148. The *Evidence Rule* states:

a witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or other wise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Defendants disagree with the characterization of the opinion expressed in the autopsy report as "of a type reasonably relied upon by experts in the particular field." Physicians, defendants assert, do not normally rely on the type of evidence included in this autopsy report. Specifically, the medical examiner's opinion about the synergistic interaction between asbestos and cigarettes and their causal contribution to fatal lung cancer, which the expert related in her testimony, is not information normally relied on by a doctor in making "life or death" decisions.

Defendants also emphasize that the quoted portion of the autopsy report constituted an opinion of the medical examiner rather than a "finding." In support of that point, defendants cite comment 7 to *Evidence Rule* 56(2), which states:

The danger inherent in permitting an expert to base his opinion on otherwise inadmissible hearsay is that such evidence will be brought to the jury's attention when the expert is asked to explain the basis of his opinion. It would seem that this could provide a convenient means for alerting the jury to evidence that it would not otherwise be permitted to hear.

Defendants stress that point because they believe that the autopsy comment had a direct bearing on the jury's answer to interrogatory number one, in which the jury found that asbestos was a substantial contributing factor in decedent's lung cancer.

We previously concluded, in *State v. Reddick*, 53 *N.J.* 66, 248 A.2d 425 (1968), that the opinions of a medical examiner were inadmissible. There, we noted that although a medical examiner's report could be admitted into evidence, the court was required to "excise all matters of opinion as to the cause of death and other conclusions made by the examining doctor with regard to the place and manner of death." *Id.* at 68, 248 A.2d 425.

In this case, the experts themselves offered no evidence that an opinion expressed by a medical examiner on something as complex and controversial as the synergistic causal effect of asbestos exposure and cigarette smoking on fatal lung cancer was the type of information that other medical experts in the field would reasonably use and rely on in forming their own opinions concerning medical causation. Absent any kind of evidence that would validate the reliability of that form of medical opinion, we concur that the comment of the medical examiner in the autopsy report was not competent and should have been excluded from evidence.

The Appellate Division determined, however, that the trial court's admission of the complete contents of the autopsy report as related through the expert's testimony constitutes at most harmless error. 259 *N.J.Super.* at 48, 611 *A.*2d 148. We need not address that ruling since the matter must be remanded for retrial and the erroneous admission of the opinion evidence should not be repeated.

## V

The judgment of the Appellate Division is reversed and the matter is remanded for retrial consistent with this opinion.