WILLIAM B. MILLISON AND MARIE MILLISON, HIS WIFE; VERNON G. KRONMAIER AND DOROTHY KRONMAIER, HIS WIFE; SUSAN SCHWEBEL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HAROLD SCHWEBEL; CLARENCE SCHWEBEL AND GERALDINE SCHWEBEL, HIS WIFE; FRANK BAPTISTE AND CATHERINE BAPTISTE, HIS WIFE; AND EDWARD B. AGAR AND EILEEN AGAR, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. E.I. DU PONT DE NEMOURS AND COMPANY, WILLIAM E. NEELD, JR., M.D.; G.F. REICHWEIN, M.D., DEFENDANTS-APPELLANTS, AND JOHNS-MANVILLE CORPORATION; OWENS-ILLINOIS, INC.; OWENS-CORNING FIBERGLAS CORPORATION; KEENE CORPORATION; CELOTEX CORPORATION; RAYBESTOS-MANHATTAN CORPORATION; SEPCO CORPORATION; AMATEX CORPORATION; PHILIP CAREY COMPANY; UNITED ASBESTOS AND RUBBER COMPANY, A/K/A UNARCO; ARMSTRONG CONTRACTING AND SUPPLY CORPORATION ACS INDUSTRIES, INC.; BIRD AND SONS, INC.; EAGLE-PICHER INDUSTRIES, INC.; FIBERBOARD CORPORATION; FIBERBOARD CORPORATION, PABCO DIV.; FORTY-EIGHT INSULATIONS, INC.; CHILDERS PRODUCTS COMPANY; GAF CORPORATION; PITTSBURGH CORNING CORP.; H.K. PORTER COMPANY; ROCK WOOL MANUFACTURING COMPANY; PHILADELPHIA ASBESTOS CORPORATION, D/B/A PACOR, INC.; SOUTHERN ASBESTOS 'COMPANY; DELAWARE INSULATION COMPANY; ARMSTRONG WORLD INDUSTRIES, INC.; GARLOCK, INC.; J.W. ROBERTS, LTD., A DIVISION OF TURNER & NEWALL, LTD.; JOHN DOE CORPORATIONS (1–47); ALBINAS SMULKSTYS, M.D.; JOHN DOE(S), M.D. AND RICHARD ROE, M.D., DEFENDANTS.

Argued April 24, 1989—Decided May 31, 1989.

*Thomas L. Morrissey* argued the cause for appellants (*Carpenter, Bennett & Morrissey,* attorneys, *Rosemary Alito,* of counsel, *Silvio J. DeCarli* and *Kevin P. Duffy* on the brief).

*David Jacoby* argued the cause for respondents (*Tomar, Seliger, Simonoff, Adourian & O'Brien,* attorneys, *David Jacoby, Joshua M. Spielberg* and *Esther Berezafsky,* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

We affirm, substantially for the reasons expressed by the Appellate Division in its opinion reported at 226 *N.J.Super.* 572.

█ We add to the Appellate Division's thorough analysis only the following observations. Defendants contend that defendant Dr. William L. Neeld, an employee of defendant du Pont, cannot properly be held liable because there is no evidence that Neeld reviewed the medical records of plaintiffs Millison and Agar and thereafter concealed knowledge of those plaintiffs' asbestos-related diseases. In fact, the record contains evidence permitting inferences that during 1979 Neeld was less than fully forthcoming with information concerning Millison's and Agar's asbestos-related abnormalities.

For example, an August 13, 1979, letter written by Neeld indicated that Millison had been identified in May of that year as having pleural thickening and calcification. In June, Millison had met with Neeld and was told that a diagnosis of asbestosis that had been made by Millison's physician was, in essence, not fully supported. It is unclear whether Neeld made mention at that time of the May finding of pleural abnormalities. A record entry by Neeld showed that he told Millison that his "x-ray findings could be related to occupational exposure to asbestos," but that without further evidence Neeld was "not going to make any recommendations that [Millison] be removed from the work he had been doing."

Millison testified at trial that when he told Neeld of his own physician's diagnosis of asbestosis, Neeld responded that he did not have all the symptoms. He further testified that when he asked Neeld if he would recommend that Millison be transfer-

red from his job, Neeld said, "If I do it for you, I've got to do it for everybody." According to an entry made by Neeld on August 21, 1979, Millison was told that certain bodily effects he had "could be attributable to asbestos exposure," but that the cause of any changes he had experienced was to be determined by an "official managerial decision." Finally, in September 1979 Millison was informed that the company had accepted his asbestos-related abnormalities as being due to workplace exposures.

Similarly, plaintiff Agar was found by a du Pont physician in May and again in June of 1979 to have pleural abnormalities consistent with changes due to asbestos exposure. Yet in July Dr. Neeld noted on Agar's medical record that he told Agar that the "modest x-ray changes" found on his last annual physical exam were "no serious problem," and that no "abnormal physical findings" had been identified. At the end of that same month, however, an outside physician whose services were paid for by du Pont examined Agar and notified him that he had asbestos-related abnormalities, and in September Neeld notified Agar that the company had accepted responsibility for his case.

More importantly, however, we think that plaintiffs' lack of direct proof that Neeld reviewed Millison's and Agar's medical records during the periods of concealment is not of paramount significance for the simple reason that those records never indicated that Millison or Agar had asbestos-related abnormalities during the actionable periods. Yet a jury, persuaded that defendants were engaged in a deliberate corporate strategy to conceal plaintiffs' asbestos-related diseases, would not likely expect the company's medical records to reflect accurately plaintiffs' conditions. Based on the evidence of Neeld's deep involvement in asbestos policy on both the corporate and plant levels, including the evidence of Neeld's 1966 and 1972 reviews of the Chambers Works asbestos workers, a jury might very well not have regarded proof that Neeld personally reviewed the records as an indispensable ingredient of his liability. Put

differently, such proof was not a necessary prerequisite to a jury's finding that the weight of credible evidence established that Neeld would have been informed of plaintiffs' illnesses when they were discovered and that he had been complicit in their concealment.

■ In respect of the admission at trial of the Occupational Safety and Health Act (OSHA) citations, we must consider whether, accepting their admissibility for the nonhearsay purposes of establishing the fact of the OSHA investigation and the timing of the citations, the citations' contents had the clear capacity to cause an unjust result. See *Rule* 2:10–2. In view of the volume of evidence introduced on plaintiffs' case, much of which was directed to the same point as was reinforced by the citations' impermissible words, and in view of the defendants' failure to seek a limiting instruction, we agree with the Appellate Division's assessment that the additional increment of prejudice provided by admission of the citations' contents was harmless error. See discussion, 226 *N.J.Super.* at 591–98.

Judgment affirmed.

*For affirmance*—Justice CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.