628 A.2d 710

GEORGE COFFMAN, PLAINTIFF–RESPONDENT, AND ELIZA-
BETH COFFMAN, HIS WIFE, PLAINTIFF, v. KEENE CORPO-
RATION, IN ITSELF AND AS SUCCESSOR TO BALDWIN–
EHRET–HILL, INC., DEFENDANT–APPELLANT, AND PITTS-
BURGH CORNING CORP., IN ITSELF AND AS SUCCESSOR TO
UNARCO; H.K. PORTER CO.; RAYMARK INDUSTRIES, INC.,
SUCCESSOR TO RAYBESTOS–MANHATTAN, INC.; OWENS-
ILLINOIS, INC.; OWENS CORNING FIBERGLAS CORP.; GAR-
LOCK, INC.; FIBREBOARD CORP.; CELOTEX CORPORATION,
IN ITSELF AND AS SUCCESSOR TO PHILIP CAREY MANU-
FACTURING CO.; GAF CORPORATION, IN ITSELF AND AS
SUCCESSOR TO RUBEROID CORP.; SOUTHERN TEXTILE
CO., SUCCESSOR TO SOUTHERN ASBESTOS CO.; EAGLE-
PICHER INDUSTRIES, INC.; FLEXITALLIC GASKET CO.; NI-
COLET, INC., IN ITSELF AND AS SUCCESSOR TO KEASBEY
AND MATTISON CO.; ARMSTRONG WORLD INDUSTRIES,
INC.; ROCK WOOL MANUFACTURING CO.; FLINTKOTE CO.;
J.W. ROBERTS, LTD., A DIVISION OF TURNER & NEWALL,
LTD.; ACANDS, INC.; AMCHEM PRODUCTS, INC.; BENJA-
MIN FOSTER DIV.; AND JOHN DOE CORPORATIONS (1–20),
DEFENDANTS.

Argued March 1, 1993—Decided July 26, 1993.

584

588

*Gita F. Rothschild* argued the cause for appellant (*McCarter & English*, attorneys; *Andrew T. Berry* and *Michael A. Tanenbaum*, of counsel; *John C. Garde, Thomas W. Ladd*, and *Charles F. Rysavy*, on the briefs).

*Joshua M. Spielberg* argued the cause for respondent (*Tomar, Simonoff, Adourian & O'Brien*, attorneys; *Mr. Spielberg* and *Patrice A. Gillotti*, on the briefs).

The opinion of the Court was delivered by

HANDLER, J.

In this case, plaintiff, a former naval electrician, was exposed to various quantities of asbestos during his work inside the close quarters of naval vessels. He sued defendant, Keene Corporation, and others for injuries allegedly contracted from exposure to defendant's products in the workplace.

Plaintiff claimed that defendant had violated its duty to warn consumers of the health hazards associated with asbestos products. Defendant took the position that the absence of such a warning did not proximately contribute to plaintiff's injuries because there was no evidence proffered that plaintiff would have followed such a warning, and therefore no proof that the failure to warn had contributed to plaintiff's injuries. At trial; the court instructed the jury to presume that plaintiff would have followed a warning had one been provided. That presumption, in the ab-

sence of any evidence to the contrary from defendant, allowed plaintiff to meet his burden of proof that the lack of a warning on defendant's products had caused his ailments.

This case, and the companion case, *Theer v. Philip Carey Co.*, 133 *N.J.* 610, 628 *A*.2d 724 (1993), decided today, pose the issue of whether, in a strict liability failure-to-warn case, we should recognize a rebuttable presumption that had a warning been provided by the manufacturer, the plaintiff would have heeded that warning by acting to minimize the risk of injury, and whether that presumption, if unrebutted, may constitute proof that a defendant's failure to warn contributed to the plaintiff's injuries.

## I

In 1951, plaintiff, George Coffman, commenced work at the Philadelphia naval shipyard as an electrician. In that post, he worked in the cramped interiors of various ships and vessels that were being serviced and overhauled. Coffman worked inside those ships until his retirement in July 1969.

As an electrician, Coffman was required to remove electric cables and to repair and replace those cables. Electricians worked throughout the ship in various compartments, including the fire rooms, engine rooms, galleys, and passageways. When Coffman was present on naval ships, he was exposed to various quantities of asbestos. Much of the asbestos had been provided by defendant, Keene Corporation. During the renovation of a ship, old insulation from pipes and boilers was normally removed and replaced with new asbestos insulation. Because the ships had little ventilation on board, asbestos fiber and dust lingered in the air. Plaintiff claims to have worked almost always within two to four feet from tradesmen who were installing the asbestos insulation.

In addition to Coffman's "bystander" exposure to asbestos products, he also had direct contact with asbestos in that shipyard. Often he would cut into asbestos insulation to mount brackets or

install new cable. None of the asbestos products supplied by Keene contained any health or safety warnings.

After his retirement, plaintiff began working at the Defense Industrial Supply Center in Philadelphia. In that new post, Coffman had very minimal exposure to asbestos. He was, however, diagnosed with Paget's disease—a degenerative bone condition. He subsequently retired on a disability pension in 1976. From 1979 to 1988, Coffman held numerous jobs, none of which exposed him to asbestos. In 1988, he permanently retired from the workforce.

In 1985, during the course of seeking other medical treatment, plaintiff discovered that he suffered from asbestos-related injuries. Coffman had his chest X-rayed. Based on the X-ray, a pulmonary specialist determined that Coffman had extensive scarring on both lungs as well as asbestos fibers in the lungs. He was diagnosed as having pulmonary asbestosis. Coffman was required to undergo annual medical monitoring in order to detect any future incidence of lung cancer.

Coffman became angry, shocked, and extremely fearful after receiving his diagnosis. Plaintiff had previously watched his brother-in-law die from asbestos-induced lung cancer. As a result, he lived in fear that a similar fate would befall him.

Coffman and his spouse, Elizabeth Coffman, commenced a product-liability action against defendant Keene and several other asbestos manufacturers who had supplied the naval shipyard with asbestos products. He claimed that defendant's failure to place warnings of the health hazards posed by asbestos on its insulation products was a proximate cause of his asbestosis. Thus, the defect Coffman alleged was the absence of a warning on the product.

At trial, defendant contended that the jury had to find specifically that the lack of a warning on the asbestos products was the proximate cause of plaintiff's injury. The trial court disagreed with defendant's argument. Instead, the court instructed the jury

that it should presume that if defendant had provided an adequate warning, it would have been followed. Thus, the jury was asked to determine only whether defendant's product itself was a substantial or significant factor in bringing about plaintiff's injury.

The jury awarded plaintiff $300,000 for pain and suffering stemming from his asbestosis. The jury found additionally that Coffman exhibited a reasonable fear of developing lung cancer brought on by his exposure to asbestos, for which he was also awarded $100,000 as a compensation. Furthermore, plaintiff was awarded $6,000 to defray the cost of continued medical surveillance to monitor any potential signs of lung cancer. The jury concluded that defendant had substantially contributed to plaintiff's injuries. It found that Keene was approximately 15% responsible for plaintiff's injuries. Defendant filed a motion for a new trial or in the alternative for a judgment notwithstanding the verdict. The trial court denied defendant's motions, and defendant appealed.

The Appellate Division in a reported decision, 257 *N.J.Super.* 279, 608 *A.*2d 416 (1992), affirmed the trial court's judgment, ruling that a plaintiff in a failure-to-warn case may rely on a "heeding presumption" in order to prove that the absence of a warning proximately caused his or her injury. The Court granted certification, 130 *N.J.* 596, 617 *A.*2d 1219 (1992), to review that ruling.

## II

To establish a cause of action in strict liability for a defective product, a plaintiff must prove that the defect existed when the product left the defendant's control and that the defect caused injury to a reasonably foreseeable user. *See Jurado v. Western Gear,* 131 *N.J.* 375, 385, 619 *A.*2d 1312 (1993); *O'Brien v. Muskin Corp.,* 94 *N.J.* 169, 186, 463 *A.*2d 298 (1983). In a failure-to-warn case, the alleged product defect is not a flaw in the structure or design of the product itself. Rather, the defect is the absence of a warning to unsuspecting users that the product can

potentially cause injury. *Freund v. Cellofilm Properties, Inc.,* 87 *N.J.* 229, 242, 432 *A.*2d 925 (1981) (holding that "the duty to warn in the strict liability cause of action is based on the notion that absent a warning or adequate warning a product is defective, in that it is not reasonably fit, suitable or safe for intended purposes"). Nevertheless, the same elements to establish a cause of action apply when a plaintiff's claim concerning a defective product is based on a failure to warn. *Id.* at 241, 432 *A.*2d 925.

Causation is a fundamental requisite for establishing any product-liability action. The plaintiff must demonstrate so-called product-defect causation—that the defect in the product was a proximate cause of the injury. *Michalko v. Cooke Color & Chem. Corp.,* 91 *N.J.* 386, 394, 451 *A.*2d 179 (1982); *Vallillo v. Muskin Corp.,* 212 *N.J.Super.* 155, 159, 514 *A.*2d 528 (App.Div.1986). When the alleged defect is the failure to provide warnings, a plaintiff is required to prove that the absence of a warning was a proximate cause of his harm. *See Campos v. Firestone Tire & Rubber Co.,* 98 *N.J.* 198, 485 *A.*2d 305 (1984). Further, in *asbestos* failure-to-warn cases, a plaintiff must normally prove another kind of causation. In addition to product-defect causation, the plaintiff must demonstrate that his or her injuries were proximately caused by exposure to defendant's asbestos product. That is known as "medical causation." *Sholtis v. American Cyanamid,* 238 *N.J.Super.* 8, 30–31, 568 *A.*2d 1196 (App.Div.1989).

The trial court in this case instructed the jury with respect to the medical causation. Plaintiff was required to prove that he had an asbestos-related injury that had been proximately caused by exposure to defendant's product. However, with respect to product-defect causation—that is, causation attributable to the absence of a warning—the court charged that New Jersey law presumes that a plaintiff would have followed a warning had one been provided. That instruction enabled the jury to conclude, without any additional evidence, that the failure to warn had proximately caused plaintiff's injury.

The Appellate Division approved the trial court's jury instructions. It recognized that the trial court's charge with respect to product-defect causation included a so-called "heeding presumption"—a presumption that plaintiff would have "heeded" or followed a warning had defendant given one. The court further ruled that in the absence of any countervailing evidence, "a trial judge need not submit the issue of proximate cause from the absence of a warning to the jury but may determine as a matter of law that the warning would have been heeded." 257 *N.J.Super.* at 290, 608 *A.*2d 416.

### III

■ The Appellate Division, in adopting the use of a heeding presumption in failure-to-warn cases, found support for such a presumption in comment j to Section 402A of the *Restatement (Second) of Torts* (1965). 257 *N.J.Super.* at 287–88, 608 *A.*2d 416. It also observed that the use of a heeding presumption had been previously suggested or alluded to by this Court in *Campos, supra*, 98 *N.J.* at 209, 485 *A.*2d 305. 257 *N.J.Super.* at 289, 608 *A.*2d 416.

Defendant contends that our decision in *Campos* did not endorse the use of a heeding presumption, and, indeed, expressly rejected it. We agree with defendant that *Campos* did not establish the use of a heeding presumption in failure-to-warn cases. In *Campos*, we concluded that a manufacturer of a tire rim assembly had a duty to warn the mechanic of the danger of using that device. In discussing whether the defendant's lack of warning had caused the plaintiff's injury, we reiterated the need for the plaintiff to prove that a lack of warning had been a proximate cause of his injury. However, we did note parenthetically that " 'in failure to warn products liability cases some courts have helped plaintiffs overcome the burden of proof by positing a rebuttable presumption that the warning would have been heeded if given,' " 98 *N.J.* at 198, 485 *A.*2d 305 (quoting Aaron Twerski, "Seizing the Middle Ground Between Rules and Standards in

Design Defect Litigation: Advanced Directed Verdict Practice in the Law of Torts," 57 *N.Y.U.L.Rev.* 521, 562 (1982)). Nevertheless, we declined directly to consider the use of a heeding presumption.

The Appellate Division, in adopting a heeding presumption, found its approach consistent with the *Restatement.* It construed comment j as providing a rebuttable presumption in failure-to-warn cases "assisting plaintiffs in establishing proximate cause as to the defect"; in other words, the plaintiff would be entitled to rely on the presumption in order to prove that the absence of a warning had proximately caused his or her harm. 257 *N.J.Super.* at 287–88, 608 *A.2d* 416. Referring to comment j, the Appellate Division stated that if an adequate warning exists, a product is no longer considered defective, because when a manufacturer provides a warning, "the seller may reasonably assume that it will be read and heeded." *Id.* at 287, 608 *A.2d* 416. The Appellate Division concluded that because a manufacturer or seller would benefit when a warning was provided, "a logical corollary of Comment j is that the buyer or user should benefit where a warning is *not* given." *Ibid.* Consequently, "if a seller or manufacturer is entitled to a presumption that an adequate warning will be read and heeded, plaintiff should be entitled to the same presumption when no warning is given." *Ibid.*

Defendant takes issue with the premise underlying comment j. It claims that one cannot *logically* assume, based on objectively-determined facts, that consumers or product users will heed warnings if they are provided. Defendant has provided a plethora of data and studies in its pleadings to bolster its point that with the proliferation of warnings in our society, it is nearly impossible to go through a day without consciously ignoring warnings designed to protect our health and safety. Hence, defendant asserts, there is no common experience on which we can premise the creation of a presumption that the general public reads and heeds warnings.

■ We can agree with defendant that the heeding presumption is not firmly based on empirical evidence. It is not therefore a "natural" or "logical" presumption. *E.g., Lionshead Woods v. Kaplan Bros.,* 243 *N.J.Super.* 678, 682–83, 581 *A.*2d 137 (Law.Div. 1990) (stating that "logical" or "natural" presumption is established when, based on common experience, empirically-demonstrable probability exists that presumed fact flows logically from underlying fact); *see Evidence Rule* 13; *Biunno, Current New Jersey Rules of Evidence,* Cmt. 1 to *Evid.R.* 13 (1993) (noting that presumption is warranted when, based on either common sense or empirical evidence, one can conclude that more probably than not presumed fact is true); *e.g., Weathers v. Hartford Ins. Co.,* 77 *N.J.* 228, 390 *A.*2d 548 (1978) (presuming that letter bearing sufficient postage and mailed to correct address was received by addressee).

■ Nevertheless, the creation of a presumption can be grounded in public policy. *See Lionshead Woods, supra,* 243 *N.J.Super.* at 682, 581 *A.*2d 137 (noting that certain presumptions, sometimes referred to as "artificial" presumptions, although based somewhat on natural inferences, are created to reach public-policy objectives); *e.g., Gladden v. Cadillac Motor Car. Div.,* 83 *N.J.* 320, 416 *A.*2d 394 (1980) (presuming that contractual provision limiting consequential damages for injuries arising from use of consumer goods is unconscionable). Although empirical evidence may not demonstrate the soundness of a heeding presumption, an examination of the strong and consistent public policies that have shaped our laws governing strict products liability demonstrates the justification for such a presumption.

The use of presumptions grounded in public policy in relation to a product-liability claim is not novel. We have often adopted or used presumptions in that context in order to advance our goals of fostering greater product safety and enabling victims of unsafe commercial products to obtain fair redress. The concept of strict products liability itself "arose in part because of a basic presumption that persons not abusing products are not usually injured unless a manufacturer failed in some respect in designing, manu-

facturing or marketing the product." *O'Brien, supra,* 94 *N.J.* at 195, 463 *A.*2d 298 (Schreiber, J., concurring in part and dissenting in part).

The emphasis in strict-products-liability doctrine is on the safety of the product, rather than the reasonableness of the manufacturer's conduct. *Suter v. San Angelo Foundry & Mach. Co.,* 81 *N.J.* 150, 169, 406 *A.*2d 140 (1979) (holding that safety is predominant factor in determining adequacy of manufacturer's efforts). Our focus on the actual condition of the product is premised on the principle that affixing fault and responsibility for product-caused injury should not turn on the ability of the victim to prove the defendant's acts of negligence. Further, the risk of loss stemming from unsafe products should be rationally allocated to the manufacturers, distributors, and other parties in the stream of commerce. *See O'Brien, supra,* 94 *N.J.* at 179–80, 463 *A.*2d 298.

Warnings can be essential to assure that products are reasonably safe for their intended uses. *Freund, supra,* 87 *N.J.* at 240 n. 3, 432 *A.*2d 925 (quoting Robert Keeton, "Products Liability—Inadequacy of Information," 48 *Tex.L.Rev.* 398, 403 (1970)) ("[T]he question of whether a product was properly designed is inseparable from the question of whether adequate instructions are provided to insure safe usage"); *Vallillo, supra,* 212 *N.J.Super.* at 159, 514 *A.*2d 528. A duty to warn is consonant with a manufacturer's broader duty to place in the stream of commerce only products that are reasonably safe. *Campos, supra,* 98 *N.J.* at 207–08, 485 *A.*2d 305. Consistent with our emphasis on the condition of the product and not the conduct of the manufacturer, we have recognized that the failure to warn constitutes a product defect and that strict liability was more appropriate than negligence doctrine for resolution of inadequate warning cases. *Freund, supra,* 87 *N.J.* at 237, 432 *A.*2d 925 (characterizing absence of adequate warning as design defect in product).

The heeding presumption thus serves to reinforce the basic duty to warn—to encourage manufacturers to produce safer products, and to alert users of the hazards arising from the use of those products through effective warnings. The duty to warn exists not only to protect and alert product users but to encourage manufacturers and industries, which benefit from placing products into the stream of commerce, to remain apprised of the hazards posed by a product. The use of the heeding presumption provides a powerful incentive for manufacturers to abide by their duty to provide adequate warnings. *See Nissen Trampoline Co. v. Terre Haute First Nat'l Bank,* 332 *N.E.*2d 820, 826 (Ind.Ct.App.1975) (holding that heeding presumption "would discourage those manufacturers who would rather risk liability than provide a warning which would impair the marketability of the product"), *rev'd on procedural grounds,* 265 *Ind.* 457, 358 *N.E.*2d 974 (1976).

One of the policy considerations for imposing strict product liability has been to ease the burden of proof for an injured plaintiff, a policy achieved by eliminating the requirement that a plaintiff prove the manufacturer's negligence. *O'Brien, supra,* 94 *N.J.* at 179, 463 *A.*2d 298. Consistent with that approach, we have imputed knowledge of a product's defect to the manufacturer, thus eliminating conjecture about whether the manufacturer had actual notice or knowledge of the defect. *Promaulayko v. Johns Manville Sales Corp.,* 116 *N.J.* 505, 510, 562 *A.*2d 202 (1989); *Michalko,* 91 *N.J.* at 395–95,451 A.2d 179; *Freund, supra,* 87 *N.J.* at 239, 432 *A.*2d 925. We ascribe knowledge of defects to manufacturers in order to focus exclusively on the safety of the product rather than on a more elusive and uncertain consideration of the manufacturer's conduct. Moreover, in the failure-to-warn context, we impose on the plaintiff a very low threshold of proof in order to impute to a manufacturer sufficient knowledge to trigger the duty to provide a warning of the harmful effects of its product. The plaintiff need not prove that the defendant manufacturer was cognizant of a defect, but rather that knowledge of the defect existed within the relevant industry. *See*

*Feldman v. Lederle Laboratories,* 97 *N.J.* 429, 453, 479 *A.*2d 374 (1984). Once the plaintiff comes forth with such evidence, we impute knowledge to the manufacturer, which in turn may provide evidence that "the information [concerning the product defect] was not reasonably available or obtainable and that it therefore lacked actual or constructive knowledge of the defect." *Id.* at 455–56, 479 *A.*2d 374. As the Appellate Division recognized, "in a failure to warn case, establishing that the absence of a warning was a substantial factor in the harm alleged to have resulted from exposure to the product itself is particularly difficult." 257 *N.J.Super.* at 295, 608 *A.*2d 416. The heeding presumption thus serves to lighten a plaintiff's burden of proof concerning proximate causation. *See, e.g., Payne v. Soft Sheen Products,* 486 *A.*2d 712, 725 (D.C.1985).

The Appellate Division also observed that a jury determination of whether, if a warning had been provided, it would have been followed would most likely be highly speculative. A jury, in effect, would be invited to imagine whether a plaintiff, given the various facets of his or her personality and employment situation, would have heeded a warning. *Id.,* 257 *N.J.Super.* at 285, 608 *A.*2d 416. Like the Appellate Division, other courts have found that the excessively-speculative nature concerning whether the plaintiff would follow a warning impelled the use of a heeding presumption. *See Nissen Trampoline, supra,* 332 *N.E.*2d at 826–27 (holding that requiring plaintiff to prove that he would have heeded warning "would undermine the purpose of strict tort liability since any such testimony would be speculative at best"); *Payne, supra,* 486 *A.*2d at 725 (holding that rule requiring plaintiff to prove that failure to warn caused his injury "would impose an impossible burden on the plaintiff and would often prevent recovery because of pure speculation on the part of the jury"). Similarly, the use of the presumption can discourage resort to evidence that is likely to be self-serving and unreliable. See *Reyes v. Wyeth Laboratories,* 498 *F.*2d 1264, 1281 (5th Cir.1974) (holding that heeding presumption is preferable because plaintiff's testimo-

ny in *absence* of heeding presumption so self-serving as to be useless). Thus, the effect of the heeding presumption will be to direct factual inquiries to the real causes of injury in a failure-to-warn case. *E.g., Johansen v. Mikita,* 128 *N.J.* 86, 607 *A.*2d 637 (1992); *accord Campos, supra,* 98 *N.J.* at 210, 485 *A.*2d 305 (recognizing that issue of causation was hotly contested and case should be remanded for more fact-specific inquiry into plaintiff's knowledge and conduct). The use of the presumption will be conducive to determinations of causation that are not based on extraneous, speculative considerations and unreliable or self-serving evidence.

A great many jurisdictions have adopted the heeding presumption in failure-to-warn cases. Most jurisdictions have done so with explicit reference to comment j as the basis for such a presumption. See *Reyes v. Wyeth Laboratories, supra* 498 *F.*2d at 1281; *Dias v. Daisy Heddon,* 180 *Ind.App.* 657, 390 *N.E.*2d 222, 225 (1979); *Wooderson v. Ortho Pharmaceutical Corp.,* 235 *Kan.* 387, 681 *P.*2d 1038, 1057 (1984), *cert. denied,* 469 *U.S.* 965, 105 *S.Ct.* 365, 83 *L.Ed.*2d 301 (1984); *Bloxom v. Bloxom,* 512 *So.*2d 839, 850 (La.1987); *Eagle–Picher Industries, Inc. v. Balbos,* 326 *Md.* 179, 604 *A.*2d 445, 468–69 (1992); *Wolfe v. Ford Motor Co.,* 6 *Mass. App.Ct.* 346, 376 *N.E.*2d 143, 147 (1978); *Grady v. American Optical Corp.,* 702 *S.W.*2d 911, 918 (Mo.Ct.App.1985); *Butz v. Werner,* 438 *N.W.*2d 509, 517 (N.D.1989); *Seley v. G.D. Searle & Co.,* 67 *Ohio St.*2d 192, 423 *N.E.*2d 831, 838 (1981); *Magro v. Ragsdale Bros., Inc.,* 721 *S.W.*2d 832, 834 (Tex.1986); *Technical Chemical Co. v. Jacobs,* 480 *S.W.*2d 602, 606 (Tex.1972).

Several other jurisdictions have adopted the presumption without a specific reference to comment j. See *Ferebee v. Chevron Chemical Co.,* 736 *F.*2d 1529, 1538–39 (D.C.Cir.1984) (applying Maryland law); *Payne, supra,* 486 *A.*2d at 725; *Cunningham v. Charles Pfizer & Co., Inc.,* 532 *P.*2d 1377, 1382 (Okla.1974). *Menard v. Newhall,* 135 *Vt.* 53, 373 *A.*2d 505, 506 (1977); *But See Raney v. Owens–Illinois Inc.,* 897 *F.*2d 94, 95–96 (2d Cir.1990) (holding that term presumption was better used to describe cir-

cumstances when ultimate fact could be inferred from one or more subsidiary facts); *Potthoff v. Alms*, 41 *Colo.App.* 51, 583 *P.*2d 309, 311 (1978) (finding no indication that comment j creates a heeding presumption); *Skonberg v. Owens–Corning Fiberglas Corp.*, 215 *Ill.App.*3d 735, 159 *Ill.Dec.* 359, 363–364, 576 *N.E.*2d 28, 32–33 (rejecting use of a heeding presumption based on *Raney* rationale) (1991), *appeal denied*, 141 *Ill.*2d 561, 162 *Ill.Dec.* 509, 580 *N.E.*2d 135; *Thomas v. Hoffman–LaRoche, Inc.*, 949 *F.*2d 806, 812–14 (applying Mississippi law), *reh'g denied*, 957 *F.*2d 869 (5th Cir.), *cert. denied*, —— *U.S.* ——, 112 *S.Ct.* 2304, 119 *L.Ed.*2d 226 (1992);

Our courts have previously recognized the significance of comment j to Section 402A. In *Torsiello v. Whitehall Laboratories*, 165 *N.J.Super.* 311, 320, 398 *A.*2d 132 (1979), the Appellate Division noted that comment j "expresse[d] the concept well-established in our tort law" that a manufacturer has a duty to warn consumers of potential hazards. *See also Cepeda v. Cumberland Eng'g Co., Inc.*, 76 *N.J.* 152, 168–69, 386 *A.*2d 816 (1978) (noting that Section 402A is supplemented by 17 comments, some of which are fully incorporated into fabric of our law and none of which has been rejected). Moreover, our courts and federal courts have begun to cite both *Campos* and the Appellate Division opinion in this case as a basis for using a heeding presumption in failure-to-warn cases. See *Wundrack v. Armstrong World Industries*, 1991 *WL* 172956 (D.N.J.1991) (holding that although New Jersey courts have not adopted the heeding presumption, it is nonetheless consistent with other policies in failure-to-warn context); *Dafler v. Raymark Industries, Inc.*, 259 *N.J.Super.* 17, 39, 611 *A.*2d 136 (App.Div.1992) (citing *Coffman* with reference to proximate causation in asbestos failure-to-warn case); *Fabian v. Minster Machine Co.*, 258 *N.J.Super.* 261, 609 *A.*2d 487 (App.Div. 1992) (holding that rebuttable presumption exists that missing warning would have been heeded if provided).

We conclude that the heeding presumption in failure-to-warn cases furthers the objectives of the strong public policy

that undergirds our doctrine of strict products liability. The heeding presumption accords with the manufacturer's basic duty to warn; it fairly reduces the victim's burden of proof; and it minimizes the likelihood that determinations of causation will be based on unreliable evidence. Consequently, we now hold that with respect to the issue of product-defect causation in a product-liability case based on a failure to warn, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning had one been provided, and that the defendant in order to rebut that presumption must produce evidence that such a warning would not have been heeded.

## IV

The use of a rebuttable heeding presumption will serve to shift plaintiff's burden of proof on the issue of causation as it relates to the absence of a warning. Defendant claims that that burden shifting not only is unjustifiable and unfair but also will result in asbestos manufacturers being liable for almost any injury caused by a product. Defendant's fears are exaggerated.

A plaintiff's mere knowledge of a product's inherent danger or risk will not absolve a manufacturer from its duty to warn. *Campos, supra,* 98 *N.J.* at 209, 485 *A.*2d 305. However, a plaintiff's knowledge of a certain risk, irrespective of the existence of a warning, may directly affect the issue of causation. Although "[a] duty to warn is not *automatically* extinguished because the injured user or consumer perceived the danger * * * [t]hat preexisting knowledge, * * *, might negate a claim that the absence of a warning was a cause in fact of plaintiff's injury." *Ibid. See also Wundrack, supra,* 1991 WL 172956 ("If a defendant can show that the injured person was aware of the dangers associated with the product such evidence would tend to rebut the presumption used by the court"); *Vallillo, supra,* 212 *N.J.Super.* at 160, 514 *A.*2d 528 (finding that plaintiff, based on his own testimony, was aware of the dangers of diving in a certain type of pool and thus, the adequacy of defendant's warning was irrele-

vant); *Technical Chemical Co., supra*, 480 *S.W.*2d at 606 (observing that defendants may prevail, one may assume, if they produce credible evidence that "the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use [of the product] would have been made regardless of the warning"); *Menard, supra*, 373 *A.*2d at 506–07 (stating that if enough rebutting evidence is admitted, the presumption disappears and goes for naught).

Evidence that a plaintiff would have disregarded an adequate warning would tend to demonstrate that the plaintiff's conduct, rather than the absence of a warning, was the cause in fact of the resultant injury. The relevance of the plaintiff's conduct on the issue of proximate causation necessarily implicates the issue of contributory negligence. *See Johansen, supra*, 128 *N.J.* at 94, 607 *A.*2d 637. Ordinarily, the defense of contributory negligence, in a strict product-liability case, is available when the plaintiff's conduct amounted to " 'voluntarily and unreasonably proceeding to encounter a known danger.' " *Ibid.* (quoting comment m, *Restatement (Second) of Torts* § 402A); *Suter, supra*, 81 *N.J.* at 167, 406 *A.*2d 140. That standard of contributory or comparative negligence is applicable in a failure-to-warn case. *See, e.g., Vallillo, supra*, 212 *N.J.Super.* at 160, 514 *A.*2d 528. Thus, evidence sufficient to demonstrate contributory or comparative negligence would require in such a case that a warning would have made known to the plaintiff the danger of the product and, notwithstanding the knowledge imparted by the warning, the plaintiff would have proceeded voluntarily and unreasonably to subject him or herself to the dangerous product. *Ibid.*

The question arises, however, whether evidence of conventional or ordinary contributory negligence would be sufficient to overcome the heeding presumption in a failure-to-warn case in the workplace context. That issue has not been raised in this case, but its consideration is essential to a determination of the nature of the evidence that must be produced to overcome the heeding

presumption in a product-liability case involving employment-related injury. The issue, moreover, is presented by the plaintiff in the companion case of *Theer v. Philip Carey Co., supra,* 133 *N.J.* at 619–623, 628 *A.2d* at 729–731.

We have consistently emphasized that a plaintiff injured in the workplace as a result of a known dangerous product cannot and should not be characterized as someone who has voluntarily and unreasonably encountered a known danger. A plaintiff who uses or is exposed to a defective product in the course of his or her employment may not be able to exercise meaningful choice with respect to confronting the risk of injury posed by the product.

In *Bexiga v. Havir,* 60 *N.J.* 402, 412, 290 *A.2d* 281 (1972), we determined that an employee engaged in assigned work on a plant or factory machine often has no meaningful choice with respect to his or her use of the machine. Recognizing that employees often do not freely opt to work with hazardous products, we stated in *Suter, supra,* 81 *N.J.* at 167, 406 *A.2d* 140, that "the law does not accept the employee's ability to take care of himself as an adequate safeguard of interests which society seeks to protect." We most recently observed that an employee really may have no choice but to continue to work with a defective and unsafe product. *Johansen, supra,* 128 *N.J.* at 94, 607 *A.2d* 637; *see also Green v. Sterling Extruder Corp.,* 95 *N.J.* 263, 271, 471 *A.2d* 15 (1984) (noting that "[a] factory worker pursuing his assigned task on a plant machine has no real choice"); *accord Crumb v. Black & Decker (U.S., Inc.),* 204 *N.J.Super.* 521, 527–28, 499 *A.2d* 530 (App.Div.1985) (holding that for *Suter* assigned-task doctrine to apply, employee must be compelled to use defective product).

It is unreasonable to assume that an employee would leave his or her position once apprised of certain safety hazards when such hazards are not rectified by the employer. *Green, supra,* 95 *N.J.* at 271, 471 *A.2d* 15 ("The practicalities of the workaday world are such that in the vast majority of cases, the employee works 'as is' or he is without a job"). We have thus rejected the application of contributory negligence when an em-

ployee was injured in the workplace during an industrial accident while using an unsafe machine for its intended purposes. See *Johansen, supra,* 128 *N.J.* at 94, 607 *A.*2d 637. Under those circumstances, "the interests of justice dictated that contributory negligence be unavailable as a defense to ... strict liability claims." *Bexiga, supra,* 60 *N.J.* at 412, 290 *A.*2d 281; *see Suter, supra,* 81 *N.J.* at 167, 406 *A.*2d 140 (overruling *Cepeda, supra,* 76 *N.J.* at 188, 386 *A.*2d 816 (holding that contributory negligence available when indication of unsafeness of machine was known to employee)).

The question arises, then, whether, in the employment context, the plaintiff's failure to heed a warning that is caused by the absence of meaningful choice should also be a factor in the use and application of the heeding presumption. The answer to that inquiry is found in part in the nature of the duty to warn and the policy considerations that serve to define that duty with respect to unsafe products that are used in the workplace.

We have required that a manufacturer or supplier of products that are used by employees take reasonable steps to ensure that its warning reaches those employees. *See Stephenson v. R.A. Jones,* 103 *N.J.* 194, 200, 510 *A.*2d 1161 (1986) (holding that manufacturer that knows its machines are defective has duty to employees of purchaser and may not rely on purchaser-employer to make necessary correction); *Michalko, supra,* 91 *N.J.* at 400, 451 *A.*2d 179. Consequently, a manufacturer cannot escape its duty to employees by "merely sending a warning letter and a new [safety device] to be installed on the machine." *Seeley v. Cincinnati Shaper,* 256 *N.J.Super.* 1, 14, 606 *A.*2d 378 (App.Div.1992); *accord Bexiga, supra,* 60 *N.J.* at 410, 290 *A.*2d 281 (holding that a manufacturer cannot leave duty of installing safety devices to others); *see also Davis v. Wyeth Labs,* 399 *F.*2d 121, 131 (9th Cir.1968) (holding that drug manufacturer had duty to ensure that warnings of risks of drug reached both doctor and consumer).

However, we have also recognized specifically that in the employment setting, the adequacy of a warning with respect to unsafe products may require that they be communicated to employers as well as employees; the adequacy of a warning entails alerting the employer in order to alert the employee of the dangers of the unsafe product. *Michalko, supra*, 91 *N.J.* at 400, 451 *A.*2d 179; *Bexiga, supra*, 60 *N.J.* at 403, 290 *A.*2d 281 (holding that manufacturers under duty to warn owners and foreseeable users of dangers). Reliance on supervisors and managers to become apprised of safety hazards and to retransmit these warnings orally to workers "rather than the individual reading of a product warning, is a typical method by which information is disseminated in the modern workplace." *Ferebee, supra*, 736 *F.*2d at 1529. Thus, one must assume, in many situations, that an employer must itself be warned in order to give its employees adequate warnings as part of its more encompassing duty to provide employees with a safe and healthy workplace. *See, e.g.,* Occupational Health and Safety Act ("OSHA"), 29 *U.S.C.* § 654; *Ray Evers Welding Co. v. Occupational Safety and Health Review Comm'n*, 625 *F.*2d 726 (6th Cir.1980) (concluding that negligence of industry in not providing safety equipment for employees must be proven); *Seeley, supra*, 256 *N.J.Super.* at 9, 606 *A.*2d 378 (noting that OSHA regulations create employer duty to safeguard workplace, which can include posting warnings and installing safety devices).

Implicit in the imposition of the duty to warn in the employment context is the assumption that an adequate warning will render the product safe. Consistent with that duty to warn, it should be presumed that such warnings directed to employers and employees will be heeded. Just as it is fair and reasonable to assume that such a warning will serve to render the product safe because it is calculated to alert the foreseeable user of the product of its dangers, so should one assume that such a warning if provided will be followed. That assumption comports with the reasons for extending the duty to warn to employers whose

employees foreseeably will use the product that would otherwise be unsafe in the absence of such a warning.

Hence, the heeding presumption that is applicable in a failure-to-warn case involving a defective product used in the workplace is one that implicates the conduct of both the plaintiff-employee and the employer. That presumption fully confirms the basic duty of a manufacturer or supplier to warn both employers and employees with respect to unsafe products in the workplace.

Further, we do not see the requirement that the defendant prove that an employer would not have heeded an adequate warning to posit an insuperable burden of proof or to impose absolute liability on manufacturers of defective products. Unfortunately, there are examples of employers who fail to take reasonable measures to assure the safety and health of their employees in the face of warnings. *E.g., Millison v. E.I. du Pont,* 115 *N.J.* 252, 558 *A.*2d 461 (1989) (noting that employer intentionally disregarded evidence of health hazards to its employees); *see also Beshada v. Johns–Manville Prods. Corp.,* 90 *N.J.* 191, 447 *A.*2d 539 (1982) (observing that manufacturers and industry in general may have been cognizant of health hazards to those exposed to asbestos without taking precautionary measures).

Thus, in a given case, the defendant may be able to establish that the employer's conduct, not the failure to warn, was the cause in fact of the injuries attributable to the harmful product. An employer's conduct, in either thwarting effective dissemination of a warning or intentionally preventing employees from heeding a warning, may be a subsequent supervening cause of an employee's injury that will serve to break the chain of causation between manufacturer and employee. *See Brown v. United States Stove,* 98 *N.J.* 155, 171–75, 484 *A.*2d 1234 (1984). Thus, if an employer's subsequent course of misconduct is an independent cause of an employee's injury, the absence of a warning itself may have too remote a causal connection to the injury. *Id.* at 174, 484 *A.*2d 1234. Nevertheless, that eventuality

in no way militates against the obligation of employers to provide a safe workplace and to act responsibly in protecting their employees in the use of or exposure to unsafe products. Further, we reasonably assume that a manufacturer or supplier, consistent with its own duty, will provide an adequate warning of its unsafe product to employers as well as employees.

We hold that to overcome the heeding presumption in a failure-to-warn case involving a product used in the workplace, the manufacturer must prove that had an adequate warning been provided, the plaintiff-employee with meaningful choice would not have heeded the warning. Alternatively, to overcome the heeding presumption, the manufacturer must show that had an adequate warning been provided, the employer itself would not have heeded the warning by taking reasonable precautions for the safety of its employees and would not have allowed its employees to take measures to avoid or minimize the harm from their use or exposure to the dangerous product.

## V

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*Opposed*—None.