NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-2642
_____

CHRISTINE MAYS;
MARK MAYS, (h/w),
                              Appellants
v.

GENERAL BINDING CORPORATION;
JOHN DOES 1-5, (fictitious persons);
ABC COMPANIES 1-5, (fictitious entities);
JOHN DOES 6-10, (fictitious persons);
ABC COMPANIES 6-10, (fictitious entities)


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 1-11-cv-05836)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2014
_____

Before: CHAGARES, GREENAWAY, JR., VANASKIE, *Circuit Judges*.

(Opinion Filed: April 30, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

After suffering an injury from a laminating machine, an elementary school teacher brought a product liability lawsuit against the manufacturer General Binding Corporation ("GBC"). The District Court granted GBC's summary judgment motion. For the foregoing reasons, we shall affirm the District Court's order.

## I. FACTUAL BACKGROUND

Because we write primarily for the parties who are familiar with the facts and procedural history, we recount only the essential facts.

On April 20, 2010, Christine Mays ( "Mays"), a teacher at Johnson Elementary School, was utilizing the school's laminating machine that was manufactured and sold by GBC. When Mays finished using the machine she turned the machine off with her right index finger and felt an electrical flow sensation from her finger through her arm to her shoulder. As a result of this incident, Mays sustained a burn to her right index finger and reported a permanent loss of feeling in her right finger.

On August 17, 2011, Mays, joined by her husband Mark Mays (together "Appellants"),[1] filed a complaint in the Superior Court of New Jersey, naming GBC and

---

[1] Mark Mays joined Christine Mays as a plaintiff alleging that he "has been deprived of his wife's support, society, services, advice, counsel, guidance and/or consortium" as a "direct and proximate result of the negligence of the Defendants . . . ." (App. 88.)

several unnamed persons and companies as Defendants.[2]  Defendants removed the matter to the United States District Court for the District of New Jersey based on diversity of citizenship.

After discovery and the exchange of expert reports, GBC moved for summary judgment on all claims.  Appellants did not oppose the grant of summary judgment on their negligence and manufacturing defect claims.  The District Court granted GBC's motion for summary judgment on Appellants' design defect, failure to warn, and loss of consortium claims.  This timely appeal followed.[3]

## II. JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

This Court's review of the District Court's order granting summary judgment is plenary.  *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).  Summary judgment is granted when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Beers–Capitol v. Whetzel*,

---

[2] After factual discovery Appellants had not moved to name these fictitious parties and therefore, the District Court dismissed the claims against these unnamed parties. (App. 4.)

256 F.3d 120, 130 n.6 (3d Cir. 2001).

A. Design Defect Claim

Federal courts sitting in diversity apply the substantive law of the state whose law governs the action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under New Jersey law, to succeed under a strict-liability design-defect theory, a plaintiff must generally prove that "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user." *Jurado v. W. Gear Works*, 619 A.2d 1312, 1317 (N.J. 1993). In a design defect case, a plaintiff who asserts that the product could have been designed more safely must "prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible." *Lewis v. Am. Cyanamid Co.*, 715 A.2d 967, 980 (N.J. 1998).

Appellants argue that the District Court erred in granting summary judgment on the design defect claim. Specifically, Appellants claim that a reasonable jury could reasonably infer that an alternative design of the laminating machine existed which could have prevented or reduced the risk of suffering an electrostatic shock as a result of using the machine. Appellants base this argument on the report of George Widas ("Widas

---

[3] Appellants do not appeal the District Court's dismissal of their loss of consortium claim.

4

Report"), which stated that alternative designs "were and are readily available." (Appellants' Br. 6 (internal quotation marks omitted).)

Appellants' argument fails for several reasons. First, as the District Court correctly assessed, the Widas Report was critically deficient. While the report identified "designed-in features" – including well-grounded induction bars, ionization neutralizers, and web cleaners – as alternatives to the grounding technology already utilized by GBC, it offered no specifications on whether the suggested designed-in features were economically or practically feasible. The report's analysis was further undermined by the report provided by James Crabtree, GBC's expert, documenting that none of the nine competing laminators examined incorporated the alternative design recommended by Widas. (*See* App. 229 ("None of the reviewed laminators were found to contain induction bars, inductive neutralizers or active static neutralizers in their laminate/web handling paths.").) An alternative design lacking in specificity or a factual basis cannot support a cause of action for damages because tort law is not designed to accommodate claims that would absolutely minimize accidents. *See Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996) ("An inference of defectiveness may not be drawn from the mere fact that someone was injured.").

On appeal, Appellants contend that the District Court should have conducted an *in limine* hearing, giving them an opportunity to address those concerns prior to granting summary judgment. This argument is also unavailing. While it is true that this Court has favored holding *in limine* hearings in making a reliability determination, *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999), reliability was not at issue here.

Rather, the Widas Report was critically deficient to meet the burden imposed by New Jersey law for a plaintiff to survive summary judgment. *See Lewis*, 715 A.2d at 980 ("A plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm."). The District Court was not obligated to hold the record open when it was undisputed that the report was a "very detailed" one that was "full of details." (App. 57, 58.); *see also* Fed. R. Civ. P. 56(d) (stating that a party opposing summary judgment on the basis that additional discovery is warranted must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition").

Therefore, the District Court did not err in granting GBC's motion for summary judgment on the design defect claim.

B. Failure to Warn Claim

Under New Jersey law, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . failed to contain adequate warnings or instructions . . . ." N.J. Stat. Ann. § 2A:58C-2 (West 1987).

In order to bring a failure to warn claim, a plaintiff must initially establish that the defendant had a duty to warn. *James v. Bessemer Processing Co., Inc.*, 714 A.2d 898,

6

908 (N.J. 1998).  To establish such a duty, she must satisfy "a very low threshold of proof in order to impute to a manufacturer sufficient knowledge to trigger the duty to provide a warning of the harmful effects of its product."  *Coffman v. Keene Corp.*, 628 A.2d 710, 719 (N.J. 1993).  In cases proceeding under a theory of strict liability, as here, knowledge of the harmful effects of a product will be imputed to a manufacturer on a showing that "knowledge of the defect existed within the relevant industry."  *Id.*

Appellants argue that the District Court erred in finding that there was insufficient evidence triggering a duty to warn, since the Court had observed that there could be a genuine dispute as to a material fact with regard to whether the discharge of static electricity could cause personal injury.

Appellants are conflating two distinct concepts.  The mere fact that static electricity *could* cause personal injury does not necessarily indicate that the industry was aware of the potential harm.  Indeed, the record was entirely devoid of a documented instance of a similar injury, forcing the District Court to conclude that the instant case was "an unprecedented sample-of-one incident."  (App. 27.)  Under these factual circumstances, this Court cannot presuppose knowledge of the alleged hazard of the product.  *See James*, 714 A.2d at 908 (holding that duty to warn is triggered when "knowledge in the industry has been established").

Therefore, the District Court did not err in granting summary judgment on Appellants' failure to warn claim.


**IV. CONCLUSION**

For the foregoing reasons, we affirm the order of the District Court.