**Kathy MAGISTRINI, Plaintiff,**

v.

**ONE HOUR MARTINIZING DRY CLEANING, et al., Defendants.**

**No. CIV.A. 96–4991.**

United States District Court, D. New Jersey.

Aug. 23, 2000.

Esther Berezofsky, Williams, Cuker & Berezofsky, Cherry Hill, NJ, for Plaintiff Kathy Magistrini.

Richard J. Shackleton, Shackleton, Hazeltine & Bishop, Ship Bottom, NJ, for Defendant Dow Chemical Co.

Joseph F. Lagrotteria, St. John & Wayne, Newark, NJ, for Defendant R.R. Street & Co., Inc.

Larry S. Reich, Tenzer & Greenblatt, LLP, New York City, for Defendants One Hour Martinizing Dry Cleaning and Martin Franchises, Inc.

## OPINION AND ORDER

HOCHBERG, District Judge.

Plaintiff, Kathy Magistrini, commenced this action by filing a Complaint in the Superior Court of New Jersey on August 8, 1996, alleging that her exposure to a chemical dry-cleaning solvent manufactured by Defendants Dow Chemical Company (hereinafter "Dow") and R.R. Street & Co., Inc. (hereinafter "R.R. Street") caused her to become ill with acute myelogenous leukemia (hereinafter "AML"). Dow filed a timely Notice of Removal to this Court in October, 1996. On January 5, 1998. Defendants filed summary judgment motions, which were referred to the Honorable Stanley R. Chesler, U.S.M.J. Judge Chesler denied the summary judgment motions on April 3, 1998, without prejudice to Defendants' right to refile the motions upon a wider review of scientific and other literature to prove the pre–1980 state of knowledge, or lack thereof, about whether percholorethylene (hereinafter "perc") posed a foreseeable risk of causing Plaintiff's illness. In the motion before this Court. Defendants renew their summary judgment motion, contending that they had no duty to warn Kathy Magistrini of the risk of perc as a potential cause of AML because no such causal relationship was known or reasonably foreseeable between September, 1977 and October, 1979, the period of time that Plaintiff was exposed to perc. On May 16, 2000, this Court held oral argument on Defendants' renewed summary judgment motion, at which the attorneys on both sides expertly set forth the law. For the reasons set forth below, Defendants' renewed motion for summary judgment on this limited issue of "duty to warn" is denied.

## I. FACTS

On August 19, 1999, Defendants [1] filed the instant motion for summary judgment based upon certain uncontested facts. It is undisputed that Kathy Magistrini (hereinafter "Magistrini" or "Plaintiff") worked for Defendant One Hour Martinizing Dry–Cleaning for approximately a two year period, from September, 1977 through October, 1979. While working there, Plaintiff was exposed to the dry-cleaning fluid identified as perc. Plaintiff's exposure ceased when she left One Hour's employ. In January, 1981, Plaintiff was diagnosed as having AML. As a result of this diagnosis, Plaintiff underwent a bone marrow transplant and total body radiation treatment and suffers or has suffered from constant infections, infertility, loss of body hair and nails, mouth sores, throat damage and severe weight loss.

In August, 1994, Plaintiff's husband drew her attention to a television broadcast discussing an alleged relationship between perc and leukemia. On August 8, 1996. Plaintiff filed suit against Defendants One Hour Martinizing Dry Cleaning, Martin Franchises, Dow Chemical Company and R.R. Street & Co., Inc. The Complaint sets forth four causes of action sounding in: (1) negligence; (2) strict liability; (3) gross negligence; and (4) breach of warranty. The gravamen of each of Plaintiff's claims is that Defendants placed perc into the stream of commerce in an allegedly defective, unsafe and inherently dangerous way—that is, allegedly without adequate warnings, precautions and instructions. Plaintiff alleges that the perc used by her employer was supplied by Dow and another defendant which, solely for purposes of this motion, Dow does not dispute.

On its renewed motion, Dow asserts that it is entitled to summary judgment because there is no genuine issue of fact that the state of scientific knowledge, at the time of Magistrini's alleged exposure in 1977–1979, was such that a causal relationship between perc exposure and AML was not sufficiently known or knowable, and thus Dow had no duty to warn Plaintiff of this danger.

---

1. All Defendants have joined in Dow's motion.

## II. STANDARD OF REVIEW OF DOW'S SUMMARY JUDGMENT MOTION

Pursuant to Rule 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *See Peters v. Delaware River Port Auth. Of Pa. And N.J.*, 16 F.3d 1346, 1349 (3d Cir.1994).

Substantive law controls the inquiry into which facts are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment will not be granted if the dispute over a material fact is "genuine," that is, if a reasonable jury could decide the issue in the non-movant's favor. *Id.* Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; accord Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999)(*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).)

## III. DISCUSSION AND ANALYSIS

Dow asserts that the sole issue to be determined on this motion is whether, prior to 1980, the Dow Chemical Company knew or should have known of any causal relationship between perc exposure and human myelogenous leukemia. (Defs. Mov. Br. at 7–8). Dow filed extensive submissions in support of its motion, including extensive certifications of Dow scientific personnel stating that, after an exhaustive search, Dow has found no literature prior to January 1, 1980 suggesting any knowledge of a causal relationship between perc and AML.

Plaintiff, in opposing the summary judgment motion, argues that the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58–C2, and New Jersey common law require the manufacturer of a product to warn against any dangers that the product may present. (Pl. Opp'n Br. at 8–9.) Plaintiff points to substantial documentation demonstrating that, in 1976, both the Occupational Safety and Health Administration ("OSHA") and the National Institute of Occupational Safety and Health ("NIOSH") recommended limiting exposure to perc vapors. Plaintiff further asserts that Dow's own documents written in 1977 stated that perc could be detected as an odor in the air only at levels exceeding 200 ppm. Plaintiff has submitted deposition testimony of Plaintiff and others that the odor of perc was strong in the Defendant's dry-cleaning establishment, thus leading to the inference that the perc level in the ambient air exceeded 200 ppm and that Dow knew or should have known that such exposure exceeded the safe levels established at the time by OSHA and NIOSH for persons not wearing full face mask respirators.

Most importantly, Plaintiff relies upon a January, 1978, publication of the National Institute of Occupational Safety and Health, which states that, even at a 50 ppm level of exposure, perc might present some risks to workers in dry-cleaning establishments. In NIOSH *Current Intelligence Bulletin* 20, dated January 20, 1978 (hereinafter "NIOSH Bulletin 20"), NIOSH identified perc as a potential human carcinogen, or cancer-causing agent, based upon a finding that perc caused cancer in laboratory mice. NIOSH Bulletin 20 specifically stated that, "[a]nimal

studies are valuable in helping identify human carcinogens. Substances that cause cancer in experimental animals **must be considered to pose a potential risk of cancer in man.**" NIOSH Bulletin 20 at 2 (emphasis added). NIOSH recommended that occupational exposure to perc be minimized and suggested industrial hygiene practices as an interim recommendation "while the carcinogenic potential of [perc] in the workplace is being further evaluated." *Id.* at 2. In support of its recommendation, NIOSH explained that the recommended exposure limit of 50 ppm might not provide "adequate protection from potential carcinogenic effects" because these exposure limits were selected "to prevent toxic effects other than cancer." *Id.* Citing clinical evidence demonstrating that perc is toxic to the liver and kidney in humans if absorbed either through the lungs, intestines, or skin, NIOSH Bulletin 20 recommended further studies of the carcinogenic risk of perc. *Id.* While these studies were ongoing, NIOSH recommended, as an interim measure, **"that it is prudent to handle [perc] in the workplace as if it were a human carcinogen"** and that "occupational exposure to [perc] be minimized." *Id.* at 1–2 (emphasis added). It is undisputed that Dow was fully aware of the NIOSH Bulletin, which itself reported on certain toxicity studies done by Dow.

In further support of her position, Plaintiff relies on an epidemiologic study published in the May, 1979 issue of *"American Journal of Health,"* which found an elevated level of cancer deaths among dry-cleaning workers, including a very slight excess of leukemia deaths. Plaintiff proffers an expert, David Ozonoff, M.D., who offers testimony[2] that these studies were sufficient to "raise warning flags" about a possible causal relationship between perc and leukemia.

Plaintiff argues that to grant summary judgment to Dow on the basis that, in 1977–1979 there was no scientific evidence specifically linking perc to AML is an unduly narrow interpretation of the legal duty to warn. The issue squarely presented in this summary judgment motion is whether Dow had a duty warn Plaintiff about the dangers of perc exposure in 1977–1979 if scientific knowledge at the time did not link perc exposure to the risk of the specific cancer known as AML; or whether Dow's duty to warn is more broadly defined to cover a wider range of medical risks of perc exposure about which Dow knew or should have known during that time period. For the purposes of this analysis, the Court assumes the parties' familiarity with Judge Chesler's April 3, 1998 Opinion.[3]

▮▮▮ This case is an "environmental tort action," defined by statute as a "civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances . . . ." *See* N.J.S.A. 2A:58C–1(b)(4). As such, it does not fall within the purview of the 1987 Product Liability Act.[4] *See id.; see also James v.*

2. If the case proceeds to trial, a *Daubert* hearing will be conducted to determine the admissibility of such expert testimony as to medical causation. *See infra* at 311. Solely for purposes of the instant summary judgment motion, Plaintiff's proffer is considered because all inferences must be construed in the light most favorable to the non-movant.

3. As Judge Chesler noted in his April 3, 1998 Opinion, while Plaintiff asserts claims for negligence, gross negligence, breach of warranty and strict products liability, all claims arise from Defendants' placement of perc into the stream of commerce in an allegedly defective, unsafe and inherently dangerous way, that is allegedly without adequate warnings, precautions and instructions. *See* Complaint ¶¶ 20, 25, 32. Thus, this Court need only analyze Plaintiff's claim under strict products liability, because Defendants' summary judgment motion, which argues no duty to warn, fails as to all of Plaintiff's claims for the same reason.

4. New Jersey's "Product Liability Act" ordinarily applies in product liability actions, *see* N.J.S.A. 2A:58C–1 *et seq.* However, the Act expressly excludes "environmental tort actions" or "civil action[s] seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances . . . ." *See* N.J.S.A. 2A:58C–1(b)(4). The New Jersey

*Bessemer Processing Co., Inc.*, 155 N.J. 279, 295–96, 714 A.2d 898, 906–07 (1998). Plaintiffs may look to common law causes of action where the NJPLA does not apply. *See James*, 155 N.J. at 296, 714 A.2d at 907. Under New Jersey common law, a products liability action may sound in negligence, strict liability or both. *See id.* (citing *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 237, 432 A.2d 925 (1981).) Thus, this Court's analysis begins with an overview of New Jersey common law regarding products liability.

### A. Strict Liability and Negligence in Failure to Warn Cases

■ The plaintiff in a strict product liability case must prove that: (1) the product was defective; (2) the defect existed when the product left defendant's control; and (3) the defect caused injury to a reasonably foreseeable user of the product. *See Feldman v. Lederle Labs.*, 97 N.J. 429, 449, 479 A.2d 374, 384–85 (1984). The defect alleged can be a manufacturing flaw, a design defect, or, as alleged in Kathy Magistrini's case, an inadequate warning. *See id.* (citing *O'Brien v. Muskin Corp.*, 94 N.J. 169, 181, 463 A.2d 298 (1983).) "In a failure-to-warn case, the alleged product defect is not a flaw in the structure or design of the product itself. Rather, the defect is the absence of a warning to unsuspecting users that the product can potentially cause injury." *Coffman v. Keene Corp.*, 133 N.J. 581, 593–94, 628 A.2d 710, 716 (1993). While we are concerned only with the first element of plaintiff's cause of action here, for the sake of clarity going forward, a more in depth discussion of Plaintiff's required proofs is given.

■ As is often the case, Kathy Magistrini's "failure to warn" claim arose from occupational exposure, over a period of years, to the products of multiple manufacturers, which are alleged to have caused Plaintiff's AML. *See e.g., James v. Bessemer Processing Co., Inc.*, 155 N.J. 279, 714 A.2d 898 (occupational exposure to petroleum products and other chemical substances); *Coffman*, 133 N.J. 581, 628 A.2d 710 (occupational exposure to asbestos). As stated, the plaintiff in a strict products liability action, must first show that the product was defective, in this case, that the Defendants had a duty to warn Plaintiff and that Defendants failed to issue an adequate warning. Second, Plaintiff must demonstrate that the defect existed when the product left the Defendants' control. In toxic and environmental tort cases such as the one before this Court, the third element of plaintiff's cause of action, causation, must be satisfied under two separate prongs: product-defect causation and medical causation. *See Coffman*, 133 N.J. at 594, 628 A.2d at 716. Under the first prong, "product-defect causation," Plaintiff must demonstrate that the defect in the product was a proximate cause of the injury. *See Coffman*, 133 N.J. at 594, 628 A.2d at 716. Where, as here, the alleged defect is the failure to provide adequate warnings, Plaintiff must prove that the absence of a warning was a proximate cause of her harm, that is, her exposure to the harmful substance. *Id.* Under the second prong, "medical causation," Plaintiff must demonstrate that her injuries were proximately caused by exposure to Defendants' product. *See Coffman*, 133 N.J. at 594, 628 A.2d at 716.

### A. Defendants' Duty to Warn

■■ In a failure to warn case, to show that a product is defective, and ultimately to establish product-defect causation, the plaintiff must first establish that defendant had a duty to warn. *James*, 155 N.J. at 297–98, 714 A.2d at 908. To do so, plaintiff

---

Supreme Court has applied this exclusion to employees who have been exposed to toxic chemicals or substances in the scope of their employment duties. *See e.g., James v. Bessemer Processing Co., Inc.*, 155 N.J. 279, 295–
96, 714 A.2d 898, 906–07 (1998). Thus, this Court applies the exclusion here. However, the result of this motion would be the same if analyzed under the NJPLA.

must satisfy "a very low threshold of proof in order to impute to a manufacturer sufficient knowledge to trigger the duty to provide a warning of the harmful effects of its product." *Id.* (citing *Coffman*, 133 N.J. at 599, 628 A.2d 710.) Where a plaintiff alleges strict products liability, "knowledge of the harmful effects of a product will be imputed to a manufacturer on a showing that knowledge of the defect existed within the relevant industry." *Id.* (citations omitted). When plaintiff proceeds under a negligence theory, plaintiff must establish "that the specific defendant knew or should have known of the potential hazards of the product." *Id.* Once plaintiff has made the requisite showing of knowledge, triggering defendant's duty to warn, plaintiff must next demonstrate that no adequate warning was provided. *Id.*

■ In products liability cases based upon failure to provide adequate warnings, the New Jersey Supreme Court has adopted a rebuttable "heeding presumption," which affords the plaintiff "the use of the presumption that he or she would have followed an adequate warning had one been provided . . . ." *Coffman*, 133 N.J. at 603, 628 A.2d at 720. To rebut that presumption, defendant must produce evidence that such a warning would not have been heeded by plaintiff. *Id.* If the heeding presumption remains unrebutted, it is then presumed that defendant's failure to warn caused plaintiff's harmful exposure to the product. *James*, 155 N.J. at 298, 714 A.2d at 908. Thus, product-defect causation is presumed upon a showing that de-

fendant had a duty to warn plaintiff and no adequate warning was forthcoming.[5]

Defendants here argue that they had no duty to warn Kathy Magistrini because, at the time of her exposure to the chemical, no causal relationship between perc exposure and acute myelogenous leukemia was known or knowable. In order to evaluate the parties' competing legal arguments on the breadth of the duty to warn, it is necessary to determine: (1) when a manufacturer's duty to warn arises, and (2) the meaning of the term "dangers" or "hazards", under New Jersey law, as it is used to gauge a manufacturer's duty to warn.

1. *When Does a Manufacturer's Duty to Warn Arise?*

■■ In *Feldman v. Lederle Labs.*, 97 N.J. 429, 479 A.2d 374 (1984), the New Jersey Supreme Court set forth the duty of manufacturers to warn of the "dangers" of which they knew or should have known based upon reasonably obtainable or available knowledge. In failure to warn cases, the *Feldman* Court established the principle that the defendant's conduct "should be measured by the knowledge at the time the manufacturer distributed the product. Did the defendant know, or should he have known, of the danger, given the scientific, technological, and other information available when the product was distributed; or, in other words, did he have actual or constructive knowledge of the danger?"[6] *Feldman*, 97 N.J. at 452, 479 A.2d at 386. Constructive knowledge embraces two concepts: (1) knowledge that should have

---

5. The heeding presumption effectively lessens the plaintiff's burden of establishing product-defect causation in "failure to warn" cases. The New Jersey Supreme Court has recognized that the effect of the heeding presumption is to "shift the plaintiff's burden on the element of causation away from proof that the defendant's failure to warn caused the plaintiff's exposure to defendant's product (product-defect causation), and toward proof that the defendant's product caused the plaintiff's injury or illness (medical causation)." *James v. Bessemer Processing Co., Inc.*, 155 N.J. 279, 297, 714 A.2d 898, 907–08.

6. Even under strict products liability, in failure to warn cases the reasonableness of the defendant's conduct is a factor in determining liability. *Feldman*, 97 N.J. at 451, 479 A.2d at 385–86. The New Jersey Supreme Court acknowledged that, under this standard, both negligence and strict liability in warning cases may be deemed to be functional equivalents. *Feldman*, 97 N.J. at 452, 479 A.2d at 386.

been known based on information that was reasonably available or obtainable, and (2) knowledge that should have alerted a reasonably prudent person to act. *Id.*

The question thus posed by the *Feldman* Court is "would a person of reasonable intelligence or of the superior expertise[7] of the defendant charged with such knowledge conclude that defendant should have alerted the consuming public?" *Id.* In other words, "[w]ere the available scientific data or other pertinent information such as to 'give rise to a reasonable inference that the danger is likely to exist'?" *Id.* at 453, 479 A.2d at 387 (quoting Wade, "On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing," 58 *N.Y.U.L.Rev.* 734, 749 (1983)).

As earlier stated, Plaintiff points to a number of writings that she asserts gave rise to Defendants' duty to warn, the most compelling being NIOSH Bulletin 20. *See supra* at 309–10. In her second affidavit, Jeanne Domoradzki, a professional toxicologist employed by Dow, concludes that NIOSH Bulletin 20 did not constitute actual or constructive knowledge of a danger requiring Dow to warn the Plaintiff because the Bulletin "does not give rise, in the mind of a toxicologist, to a reasonable scientific certainty that there may be a causal relationship between percholorethylene and human acute myelogenous leukemia." (*See* November 12, 1997 Affidavit of Jeanne Domoradzki at 6.) While such a professional opinion based on "reasonable scientific certainty" might well be central to the ultimate question of whether perc in fact was the medical cause of Plaintiff's

AML, that standard of scientific certainty is not the standard to be applied to the separate and distinct issue of Dow's duty to warn of dangers and risks of which Dow knew or should have foreseen during the relevant time period.[8] New Jersey Supreme Court precedent requires this Court to reject Defendants' proffered theory on the scope of their duty to warn.

In *Feldman*, the New Jersey Supreme Court favorably cited *Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099, 1108 (1976)[9], which held that, under a strict liability theory, a manufacturer of prescription drugs must warn of dangers and risks, whether or not a causal relationship between the use of the product and various attendant injuries had been definitively established at the time of the warning. *See Feldman*, 97 N.J. at 454, 479 A.2d at 387. *Feldman* further noted that the FDA requires warning labels on drugs "when there is significant medical evidence of a possible health hazard, **without waiting for a causal relationship to be established by definitive studies** which, in some instances, may not be feasible or would take many years." *Feldman*, 97 N.J. at 454, 479 A.2d at 387 (citing 39 Fed.Reg. 33,230–31 (1974)(emphasis added)). Thus, when the *Feldman* Court stated that "[a ] warning that a product may have an unknowable danger warns one of nothing," that Court had already rejected the concept that a danger is not "knowable" until causation has been established to a reasonable scientific certainty. *Id.* at 454, 479 A.2d at 387. *Feldman* clearly held that the duty to warn is triggered by

**7.** The "superior expertise" expected of the Defendants holds the manufacturer to the standard of an expert in the field who has a duty to keep abreast of scientific advances and may also be required to make tests to determine the propensities and dangers of his products. *Feldman, 97 N.J. at 452, 479 A.2d at 386.*

**8.** The sole issue before this Court is whether Dow is entitled to summary judgment that no reasonable jury could find that Dow knew or should have known of the danger, as defined

by this Court *infra*, to the Plaintiff during the years 1977–1979. The ultimate issues of whether Defendants caused Plaintiff's exposure by failing to warn her (product-defect causation) and whether perc in fact proximately caused Plaintiff's AML (medical causation) are not before the Court upon this motion.

**9.** *Hamilton* was overruled on different grounds by *State Bd. of Med. Examiners v. McCroskey,* 880 P.2d 1188 (Colo.1994).

early warning flags of danger from a product, so that people are not needlessly exposed to the possible dangers of a product during the time that extensive testing is being done.[10] In accordance with *Feldman*, this Court likewise concludes that a causal connection between the product and the danger need not be conclusively established before a manufacturer's duty to warn arises.

### 2. Of What "Dangers" Must a Manufacturer Warn?

 Having concluded that the duty to warn may arise before it is definitively known whether a product in fact poses a danger to people, it is necessary to decide the scope of "the danger" as to which there is a duty to warn under New Jersey law. Is "the danger" the precise illness affecting the Plaintiff (i.e. acute myelogenous leukemia), as Defendants suggest? Is "the danger" the family of illness that includes the precise illness affecting the Plaintiff (i.e.cancer)? Is "the danger" any serious medical condition that might have been prevented if the warning to wear a face mask respirator to prevent *other* "known" dangers, such as non-cancerous liver and kidney damage, had been communicated to Plaintiff? Is "the danger" the family of medical illnesses known to be caused by exposure to toxic chemicals in the same chemical family as perc, although not yet known to be caused by perc itself?

The purpose of imposing a duty to warn on the manufacturer is to provide the consumer with the information needed to make an educated decision as to whether to assume the risk of using defendant's product, and the opportunity to use the product in a way in which the risk of potential dangers or hazards is minimized. *See Coffman*, 133 N.J. at 599, 628 A.2d at 718. A manufacturer is obligated to provide warnings of *all*, dangers where the available scientific data or other pertinent information "give rise to a reasonable inference that the danger is likely to exist." *Feldman*, 97 N.J. at 453, 479 A.2d at 387. Markedly absent from the case law briefed to this Court is any authority that a manufacturer must warn only of the risk of the precise illness manifested by the Plaintiff. Though Defendants contend that a connection between perc and AML was not known or knowable, Defendants' scientific affidavits do not state that perc was not known to be a potential carcinogen.

While the definition of "the danger" is rarely squarely at issue in the case law, this Court is unwilling to hold that the meaning of "the danger" under New Jersey law is so narrow as to be limited solely to "the danger" of contracting human AML, as opposed to "the danger" of being exposed to a carcinogen or contracting cancer, a category of illnesses that includes AML. On the continuum of possible definitions of "the danger" described above, this definition of the scope of "the danger" is neither far reaching nor novel.[11] *See e.g.*, *James*, 155 N.J. at 294–95, 304–05, 714 A.2d 898, 905–06, 911–12 (1998)(affirming

---

**10.** Defendants admit as much in their brief, when they include in their laundry list of things which may demonstrate that a manufacturer had constructive knowledge of a danger "significant medical evidence of *possible* health hazards *even before definitive studies establish a cause or relationship* where such studies may not be feasible or may take many years." (Def. Mov. Br. at 12)(emphasis added).

**11.** New Jersey law protects the manufacturer by requiring that it warn only of known or knowable dangers. While Defendants assert that they have no duty to warn of the danger of contracting AML if the same was not known or knowable during the relevant time period, this Court will not view the issue so narrowly as to refer only to one *form* of cancer, i.e., AML rather than the *category* cancer or the exposure to a carcinogen, as to which the danger may have been known or knowable. To say that a defendant has no duty to warn that its product is ´a potential human carcinogen, if the same is known or knowable to defendant, would put the consuming public at undue risk, with potentially devastating and avoidable effects. State of knowledge presents a material issue of fact for the jury in this case.

Appellate Division's denial of summary judgment, and finding that scientific studies in toxicology report, which indicated that the chemicals at issue had been classified as human carcinogens and/or shown to be animal carcinogens, were sufficient to survive summary judgment and to present a fact question for the jury regarding whether defendants knew or should have known of the potential hazards of their products); *see also Dartez v. Fibreboard Corp.*, 765 F.2d 456, 468 (5th Cir.1985)("Evidence that [product] may be a carcinogen is relevant to defining the scope of defendant's duty to warn and the extent of their breach of that duty.... Whether a specific disease has been diagnosed in an individual plaintiff does not determine the scope of the defendants' duty to warn. What is significant is whether warning of the nondisclosed risks could have averted plaintiff's injury, or afforded him the opportunity to make a knowing choice."); *Jackson v. Johns–Manville Sales Corp.*, 750 F.2d 1314, 1320–21 (5th Cir.1985)("In establishing the scope of a manufacturer's duty to warn ... evidence of all known or foreseeable hazards posed by a product is relevant. Thus, in the instant case, evidence that asbestos is a carcinogen was clearly probative of the nature and extent of the defendants' duty and corresponding breach."); *Mason v. Texaco, Inc.*, 741 F.Supp. 1472, 1484 n. 8 (D.Kan.1990)(quoting jury instruction which instructed jury to determine whether defendant had adequately warned of the "carcinogenic propensities" and the "carcinogenic danger" of benzene), *aff'd* 948 F.2d 1546 (10th Cir.1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); *see generally Doe v. the Greater New York Blood Program*, 304 N.J.Super. 287, 299–300, 700 A.2d 377, 383 (App.Div. 1997).

The 1978 NIOSH Bulletin 20 and other data warned perc manufacturers of the need to investigate the potential carcinogenic effect of perc exposure and, in an exercise of caution, to treat perc as if it were a human carcinogen. Thus, this Court cannot conclude as a matter of law that no reasonable jury could find that Dow knew or should have been alerted to act by issuing a warning to the consuming public. *Feldman*, 97 N.J. at 452, 479 A.2d at 386.

 A reasonable jury might find that Dow, as an expert in chemical analysis, could have reasonably foreseen in 1977–1979 that the carcinogenic risk posed by perc could be prevented by proper warnings to employees who worked with perc. "The claim that a hazard was not foreseen is not available to one who did not use foresight appropriate to his enterprise." *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132, 141 (3d Cir.1973) (citations omitted). This Court believes that it is "at least open to question whether defendants used 'foresight appropriate to [their] enterprise'" in making the decision about whether to warn Plaintiff of the potential risks of carcinogenic effects of perc during the period 1977–1979.[12] *Hoffman*, 485 F.2d at 141 (citations omitted). Defendants have simply failed to meet their burden of showing that there is no triable issue of material fact. Issues of fact as to whether the potential carcinogenic risk of perc was sufficiently known or knowable in the industry and to Defendants, so as to give rise to a duty to warn Plaintiff, remain for the jury to decide. The adequacy and reasonableness of the Defendants' warning under the circumstances is also a question of fact for a jury.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' renewed mo-

---

12. Nothing in this opinion should be construed to be a finding that Dow did not, in fact, comply with its duty to warn. By agreement with the parties, that issue is not before this Court at this time. The sole issue posed by Dow's motion for summary judgment is whether any duty to warn existed. The Court notes that certain warnings published by Dow existed during the relevant time period, the sufficiency of which is not before the Court.

tion for summary judgment be, and is hereby **DENIED**; and

The parties are furthered **ORDERED** to schedule a conference with Magistrate Judge Stanley R. Chesler to set deadlines for the filing of additional pre-trial motions, if any.